UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| GLENWOOD FARMS, INC., et al., ) | |
| ) | |
|       Plaintiffs ) | |
| ) | |
| v. ) | Docket No. 03-217-P-S |
| ) | |
| GARVE IVEY, et al., ) | |
| ) | |
|       Defendants ) | |

*MEMORANDUM DECISION ON MOTION FOR ATTACHMENT*

Plaintiffs Glenwood Farms, Inc. and Carrabassett Spring Water Company, Inc. ("Plaintiffs") have moved for an attachment and attachment by trustee process on the property of all of the defendants, Garve Ivey, Ivey & Ragsdale, Thomas Sobol, Steven Berman and Hagens Berman, LLP.[1] Motion for Approval of Attachment and Attachment by Trustee Process, etc. ("Motion") (Docket No. 146). After all of the defendants filed a joint opposition to the motion, Defendants' Objection and Memorandum of Law in Opposition to Plaintiffs' Motion for Approval of Attachment, etc. ("Opposition") (Docket No. 166), and the Plaintiffs filed a reply, Reply Memorandum in Support of Plaintiffs' Motion for Approval of Attachment, etc. ("Reply") (Docket No. 188), the Plaintiffs withdrew the motion as to defendants Garve Ivey and Ivey & Ragsdale, Plaintiffs Glenwood Farms, Inc. and Carrabassett Spring Water Company, Inc.'s Withdrawal of Motion, etc. (Docket No. 193) at 1. Defendants Thomas M. Sobol and Hagens Berman Sobol Shapiro LLP then filed a motion for leave to file a sur-reply, Defendants Sobol and Hagens Berman Sobol Shapiro LLP's Motion for Attachment, etc. (Docket No. 194), which upon the granting of the motion was deemed to be the sur-reply, and the

---

[1] The law firm defendant refers to itself as Hagens Berman Sobol Shapiro, LLP, and I will use that title rather than the title which
(*continued on next page*)

1

Plaintiffs' opposition to the motion, Plaintiffs' Objection to Defendants' Motion for Leave to File Sur-Replies, etc. (Docket No. 208), was deemed to be a response to the sur-reply, Order (Docket No. 225). Following the filing by Sobol and Hagens Berman Sobol Shapiro LLP of another reply memorandum, Defendants Sobol and Hagens Berman Sobol and Shapiro LLP's Reply Memorandum in Support of Motion for Leave to File Sur-Reply ("Sobol Reply") (Docket No. 222), the final word from the parties, with leave of court, was filed by the Plaintiffs, Plaintiffs' Sur-Reply in Response to Defendants' Reply Memorandum (Docket No. 228).

Remaining for consideration by the court is the Plaintiffs' motion for an attachment in the amount of $4,880,000 on the property of Sobol, Berman and Hagens Berman Sobol Shapiro, LLP (the "remaining defendants"). Motion at 1. On the merits, the remaining defendants contend that the Plaintiffs are unlikely to prevail against them at trial, that the materials submitted in support of the motion do not demonstrate any basis for personal liability of defendant Berman, that the affidavits submitted in support of the motion are insufficient, that the evidence submitted with respect to damages is insufficient insofar as plaintiff Carrabassett is concerned and that the amount of the attachment sought is excessive. Opposition at 2-12. The sur-reply and the flurry of subsequent filings deal with the remaining defendants' contention that the release given to the Plaintiffs by Ivey and Ivey & Ragsdale reduces the amount of an attachment that could possibly be issued against the remaining defendants to a number within the limits of available insurance coverage.

Having reviewed *in camera* the release executed by defendants Ivey and Ivey & Ragsdale (Docket No. 230), I conclude that it does not affect the Plaintiffs' claims against the remaining defendants either by setting a ceiling on the amount ultimately recoverable against the remaining defendants or by effectively eviscerating the Plaintiffs' claim against defendant Sobol under Maine's

---

appears in the caption of the motion.

version of the Uniform Fraudulent Transfer Act, as the remaining defendants claim. Sobol Reply at 2-3.

As noted above, the amount of the attachment sought against the remaining defendants is $4,880,000. Motion at 1. Liability insurance available to these defendants in this matter has a policy limit of $5,000,000. *Id*. at 3. Under Maine law, which is applicable here, attachment and attachment on trustee process are available only for a specified amount, as approved by order of court, and only upon a finding that it is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance shown to be available to satisfy the judgment. M. R. Civ. P. 4A(c), 4B(c). The plaintiffs have submitted the affidavit of an expert witness estimating their aggregate damages to be $9,880,000. Affidavit of Nancy J. Fannon (filed in paper form with the Motion) ¶ 4 & appended report. The Plaintiffs contend that, because the insurance coverage available does not cover punitive damages and does include a $150,000 deductible per claim and charges expenses incurred in investigating and defending against the Plaintiffs' claims against the total available coverage, they could seek attachment in an amount far greater than the difference between their expert's statement of damages and the face value of the insurance coverage. Motion at 16-18.

I begin with my conclusion that the Plaintiffs have not demonstrated that it is more likely than not that they will recover punitive damages in this case. The evidentiary standard for recovery of punitive damages in Maine creates a high hurdle for plaintiffs. Maine law allows the award of punitive damages only upon a finding by clear and convincing evidence that the defendant acted with malice. *See, e.g., Shrader-Miller v. Miller*, 855 A.2d 1139, 1145 (Me. 2004). Malice may be express or implied; express malice exists when the defendant's tortious conduct is motivated by ill will toward the plaintiff and implied malice exists when deliberate conduct by the defendant is so

outrageous that malice toward a person injured as a result of that conduct can be implied. *St. Francis de Sales Fed. Credit Union v. Sun Ins. Co. of N.Y.*, 818 A.2d 995, 1001 (Me. 2003). Given this high standard, none of the facts recited by the Plaintiffs, Motion at 5-8, taken alone or together, makes it more likely than not that the Plaintiffs will recover punitive damages in this case. This is not to say that it is not possible that the Plaintiffs will recover punitive damages; it means only that I cannot conclude that it is more likely than not that they will make such a recovery.

The Plaintiffs provide evidence that defendants Ivey and Ivey & Ragsdale had incurred $98,234.22 in claims expenses as of February 14, 2005, and assert that the remaining defendants "ha[ve] not yet responded to Plaintiffs' inquiry respecting claims expenses to date," so that "it can only be expected" that the remaining defendants' claims expenses "will be similarly substantial." *Id.* at 3-4. While I doubt that this conclusion necessarily follows from the Plaintiffs' premise, it is not necessary that I resolve this issue, which after all concerns a relatively small percentage of the amount of the attachment sought.

The remaining defendants contend that each of the Plaintiffs' claims against them requires expert testimony on the prevailing standard of care, whether the defendants breached that standard and whether the breach made a difference in the outcome of events. Opposition at 3. Given the fact that both sides have retained experts to provide such testimony, they assert, attachment is inappropriate. *Id.* The Plaintiffs respond by asserting that "laypersons can readily assess the effect of Defendants' conduct" with respect to certain of their claims. Reply at 5. They list these "non-expert" claims as those "with respect to CBS News, the bottledwaterfraud.com website and the filing of multiple class action cases on Nestle's decision to terminate settlement negotiations." *Id*. The claims asserted by the Plaintiffs against the remaining defendants, other than the claim for punitive damages which I have already discussed, allege: negligence by breaching a duty of reasonable care, breach of various

contracts, breach of an implied covenant of good faith and fair dealing, misappropriation of confidential information, breach of fiduciary duty, conversion and tortious interference with economic relations. First Amended Complaint and Demand for Jury Trial ("Complaint") (Docket No. 119) Counts 2-8, 18-24.[2] Each of these claims arises in the context of representation of the Plaintiffs by the remaining defendants as lawyers or law firms. *Id*. I agree with the defendants that expert testimony is necessary on each of these claims. *See generally Corey v. Norman, Hanson & DeTroy*, 742 A.2d 933, 938-40 (Me. 1999) (discussing need for expert testimony in legal malpractice case in context of motion for summary judgment).

In the only case cited by the Plaintiffs in support of their argument to the contrary, *Burns v. Smith*, 495 A.2d 777 (Me. 1985), which was decided under an earlier, less demanding version of Rules 4A and 4B, *id*. at 778 n.2, the Maine Law Court did say, "[W]e have never held that expert testimony is required to establish a reasonable likelihood of success for purposes of attachment proceedings. The costs and difficulties of obtaining such testimony would contravene the intended simplicity of Rule 4A proceedings," *id*. at 779. However, the evidentiary test applied in that medical malpractice case was only whether the record "shows the plaintiffs to have had virtually no chance of recovery on their claim." *Id*. Now that the standard for an attachment is whether the Plaintiffs have shown that they are more likely than not to recover on one or more of their claims, *Burns* has little if any precedential value. Expert testimony is required to establish an attorney's breach of duty to a client except in cases where the breach or lack thereof is so obvious that it may be determined as a matter of law or is within the ordinary knowledge and experience of laymen. *Jim Mitchell & Jed Davis, P.A. v. Jackson*, 627 A.2d 1014, 1017 (Me. 1993). When the challenge is to an attorney's judgment and diligence, a trial court is justified in requiring expert testimony to support a claim of

---

[2] Separate counts allege fraudulent transfer against defendant Sobol. Complaint, Counts 33-34.

5

negligence. *Id*. The requirement may fairly be applied to each of the Plaintiffs' claims against the remaining defendants.

The Plaintiffs challenge the testimony of the defendants' expert witnesses, contending that their opinions "are unsupported by the ethical rules themselves." Plaintiffs' Reply at 9. They also assert that the testimony of these experts may not be credited because those of the designated experts who had been deposed at the time the reply was written "all deviated significantly from their designations." *Id*. I have already denied the only motion to strike brought by the Plaintiffs concerning any of these witnesses. Memorandum Decision on Motion to Strike (Docket No. 221). The first argument similarly goes only to the weight of the expert testimony, not to its admissibility. The remaining defendants also attempt to denigrate the opinions of the Plaintiffs' designated experts. Opposition at 5-6. Deciding which expert testimony to credit is not the role of the court when determining whether to grant a requested attachment. The "battle of the experts" on each of the Plaintiffs' claims precludes the granting of the motion for attachment under the prevailing Maine standard.

The Plaintiffs treat separately their UFTA claim against Sobol. Motion at 14-15. They allege that Sobol transferred his interest in two Massachusetts real estate parcels to his wife on November 15, 2004, approximately fifteen months after this litigation commenced, for $1.00, with the "obvious disparity between the nominal consideration paid and the property value . . . compel[ling] a finding that the Plaintiffs are more likely than not to obtain a judgment against Thomas Sobol on their Fraudulent Transfer [sic] claims." *Id*. at 15. The remaining defendants do not respond to this argument, but the problem for the Plaintiffs is that they proffer no evidence concerning the value of the property interest transferred. In the absence of such information it is impossible to tell whether the amount that the Plaintiffs would recover on this claim would exceed the amount of insurance coverage available as required by the applicable rules of civil procedure.

For the foregoing reasons, the motion of plaintiffs Glenwood Farms, Inc. and Carrabassett Spring Water Company, Inc. for approval of attachment and attachment on trustee process is **DENIED**.

Dated this 26th day of July 2005.

        /s/ David M. Cohen
        David M. Cohen
        United States Magistrate Judge