*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

*GLENWOOD FARMS, INC., et al.,*    )
               )
        *Plaintiffs*    )
               )
*v.*                    )       *Docket No. 03-217-P-S*
               )
*GARVE IVEY, et al.,*        )
               )
        *Defendants*    )

## *RECOMMENDED DECISION ON PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT*

Plaintiffs Glenwood Farms, Inc. and Carrabassett Spring Water Company, Inc. have filed five motions for partial summary judgment.  Plaintiff Tear of the Clouds, LLC has filed one motion for partial summary judgment.  Defendants Thomas M. Sobol, Hagens Berman Sobol Shapiro LLP and Steve Berman have filed a motion for summary judgment on all claims asserted against them in this consolidated action, as have defendants Garve Ivey and Ivey & Ragsdale.

### I.  Summary Judgment Standard

### A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004).  "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant.  By like token, 'genuine' means that 'the evidence

1

about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

"This framework is not altered by the presence of cross-motions for summary judgment." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 6 (1st Cir. 2003). "[T]he court must mull each motion separately, drawing inferences against each movant in turn." *Id.* (citation omitted); *see also, e.g., Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996) ("Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se.* Cross motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed. As always, we resolve all factual disputes and any competing, rational inferences in the light most favorable to the [nonmovant].") (citations omitted).

### B.  Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District.  *See* Loc. R. 56.  The moving party must first file a statement of material facts that it claims are not in dispute.  *See* Loc. R. 56(b).  Each fact must be set forth in a numbered paragraph and supported by a specific record citation.  *See id*.  The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]"  Loc. R. 56(c).  The nonmovant likewise must support each denial or qualification with an appropriate record citation.  *See id*.  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation.  *See id*.  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id*.

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(e).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id*.; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at

their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted." (citations and internal punctuation omitted).

## II. Factual Background

The parties' responses to the statements of material facts submitted in support of the motions for summary judgment and partial summary judgment pursuant to this court's Local Rule 56 are replete with objections and motions to strike, many of which are more indicative of the rancor with which this litigation has been conducted than of any serious deficiencies in the statements themselves. Where necessary, I will address these disputes in the course of presenting this review of the appropriately-supported material facts submitted by the parties.

Defendant Thomas Sobol is a Massachusetts attorney and a limited partner in the law firm of Hagens Berman LLP.[1] Plaintiff Tear of the Clouds LLC's[2] Statement of Material Facts Not in Dispute ("Keeper Springs SMF") (Docket No. 264) ¶ 1; Defendants' Response to Plaintiff Tear of the Cloud[s] LLC's Statement of Material Facts Not is Dispute ("Defendants' Keeper Springs Responsive SMF") (Docket No. 306) ¶ 1. Defendant Steven Berman is a Washington attorney and a partner in the law firm of Hagens Berman LLC. *Id*. ¶ 2. Defendant Garve Ivey, Jr. is an Alabama attorney and a partner in the law firm of Ivey & Ragsdale, which has a principal place of business in Alabama. *Id*. ¶ 3.

In the summer and early fall of 2002, attorney Jan Schlichtmann approached Sobol seeking to collaborate in connection with potential litigation against Nestlé, S.A. and Nestlé Waters of North American, Inc. (collectively, "Nestlé") involving claims of unfair and deceptive acts and practices of

---

[1] The name of the firm is now apparently Hagens Berman Sobol Shapiro LLP. *See* Docket No. 260 at 1 n.1.

[2] All of the parties, including Tear of the Clouds LLC, refer to Tear of the Clouds LLC as "Keeper Springs." In the hope of minimizing confusion, I will do so as well.

Poland Spring "Natural Spring Water."  Defendants' Statement of Material Facts in Support of Summary Judgment ("Defendants' SMF") (Docket No. 263) ¶ 1; Plaintiffs' Response to Defendants' Statement of Material Facts, etc. ("Glenwood Responsive SMF") (Docket No. 304)[3] ¶ 1; Plaintiff Tear of the Clouds LLC's Opposing Statement of Material Facts, etc. ("Keeper Springs Responsive SMF") (Docket No. 310) ¶ 1.  Schlichtmann wanted to bring a class action against Nestlé.  *Id*.  He was also speaking with Ivey & Ragsdale.  *Id*. ¶ 2.  He introduced Sobol to Ivey.  *Id*.

For consumer claims, Schlichtmann, Sobol and Ivey identified two general distribution chains for two consumer classes: claims for "home and office" delivery (five gallon containers) and retail or "PET" sales, "PET" being the type of plastic used for small retail bottles.  *Id*. ¶ 3.  Over a period of time, Sobol and Hagens Berman staff and lawyers worked with Schlichtmann and Ivey to investigate facts, research claims and otherwise explore the potential action.  *Id*. ¶ 4.  On November 26, 2002 Schlichtmann, Ivey and Sobol signed a joint counsel agreement which set forth their arrangements to proceed as co-counsel for the prosecution of consumer class-based, commercial market-based and competitor litigation regarding Poland Springs.  *Id*. ¶ 5.  They agreed to represent the consumer class and several water companies.  *Id*. ¶ 6.[4]  They signed attorney representation agreements with Glenwood, Keeper Springs, Carrabassett, Vermont Pure Holding Ltd. and Lori Ehrlich, as potential class representative.  *Id*.  The listed clients other than Ehrlich were companies in the business of selling water and were competitors of Poland Spring.  *Id*. ¶ 8.

Keeper Springs markets spring water and is in the business of making charitable contributions. Keeper Springs SMF  ¶ 12; Defendants' Keeper Springs Responsive SMF ¶ 12.  On April 2, 2003

---

[3] This responsive statement of material facts was submitted on behalf of plaintiffs Glenwood Farms, Inc. and Carrabassett Spring Water Company, Inc.  For ease of reference, I will refer to these two plaintiffs jointly as "Glenwood."

[4] The plaintiffs purport to deny this paragraph, Glenwood Responsive SMF ¶ 6; Keeper Springs Responsive SMF ¶ 6, but the denials do not address this factual statement and that in the next sentence, which are supported by the cited evidentiary material and accordingly are deemed admitted.  Local Rule 56(e).

Keeper Springs entered into an attorney representation agreement with defendants Sobol, Ivy, Hagens Berman LLP and Ivey & Ragsdale. *Id.* ¶ 4. The purpose of the representation agreement was to have the defendants represent Keeper Springs with regard to "potential and/or actual litigation relation to 'Poland Spring Natural Spring Water.'" *Id.* ¶ 5. On April 2, 2003 Keeper Springs, together with plaintiff Glenwood Farms, Inc., entered into a joint litigation and confidentiality agreement with Sobol, Ivey and Ivey & Ragsdale. *Id.* ¶ 6. Sobol and Ivey executed the joint litigation and confidentiality agreement on behalf of their respective law firms. *Id.* ¶ 7. In May 2003 Carrabassett Spring Water Company, Inc. signed on to the joint litigation and confidentiality agreement. Defendants' SMF ¶ 22; Glenwood Responsive SMF ¶ 22; Keeper Springs Responsive SMF ¶ 22.

The joint litigation and confidentiality agreement contains the following provisions:

> 1) Separate counsel, pursuant to a separate written engagement agreement, shall represent each Claimant's interests in the Poland Spring litigation.

> 2) To the extent any actual or potential conflicts of interest exists [sic] between and among Claimants (i.e., disputes regarding whether to settle and on what terms) based on any dissimilarity of interests, each Claimant waives any such conflict as it relates to the representations by Counsel in the Litigation.

> 3) Claimants have conferred with, and have been advised by, separate counsel on the benefits of joining and moving forward in the *Poland Spring* litigation and Claimants, relying on such advice, have expressly agreed to do so.

*Id.* ¶ 24 (italics in original).

At the outset of the potential arrangements between the competitor claimants and the three "joint counsel" law firms, Sobol was mindful that there existed two levels of potential conflict in the joint representation. Keeper Springs SMF ¶ 9; Defendants' Keeper Springs Responsive SMF ¶ 9.[5]

---

[5] The plaintiffs ask the court to strike this paragraph of the defendants' statement of material facts because it cites only to Sobol's affidavit, which they assert "was not made exclusively on personal knowledge as required by Fed. R. Civ. P. 56(e)." Glenwood Responsive SMF ¶ 9. The affidavit includes the assertion that "[t]he above statements are based on my own personal knowledge (*continued on next page*)

First, he identified that claims among the competitor claimants themselves might at some point develop into differing interests (*e.g.*, one might wish to settle and another might not). *Id*. Second, he identified that potential conflicts might arise between the competitor claims and the consumer class claims. *Id*.

The decision was made to attempt claims mediation with Nestlé first. *Id*. ¶ 18.[6] The first mediation session was held on February 28, 2003 in New Jersey. *Id*. ¶ 19. Rodney Max was hired as mediator. Plaintiffs' Statement of Additional Facts ("Glenwood's Second SMF") (included in Glenwood Responsive SMF, beginning at 23) ¶ 21; Defendants' Reply Statement of Material Facts to Glenwood/Carrabassett Opposing Statement of Facts ("Defendants' Second Responsive SMF") (Docket No. 326) ¶ 21. The mediation was governed by a mediation agreement which contained a provision preventing either party from filing suit or "going public" with their position until five days after the mediation efforts had ended pursuant to written notice of termination. Plaintiffs Glenwood Farms, Inc. and Carrabassett Spring Water Company, Inc.'s Statement of Material Facts Not in Dispute [in support of their motion for summary judgment on claims for breach of fiduciary duty against Sobol, Berman and Hagens Berman LLP] (Docket No. 257) ¶ 13; Defendants' Opposing Statement of Material Facts, Defendants' Consolidated Responsive SMF, Part I (beginning at page 2) ¶ 13. After April 2, 2003 there were extensive mediation sessions between Keeper Springs and Sobol and Ivey's other clients on one side and Nestlé Waters of North America on the other, to try to resolve claims brought by Keeper Springs and the other clients against Nestlé. Keeper Springs SMF ¶ 8; Defendants' Keeper Springs Responsive SMF ¶ 8. The mediation sessions were attended by Schlichtmann, Sobol

---

except where otherwise stated to be based on information and belief." Affidavit of Thomas M. Sobol, Esq. in Support of Defendants' Motion for Summary Judgment ("Sobol Aff.") (Docket No. 265) at 17. Affidavits submitted in connection with motions for summary judgment must be made on personal knowledge. Fed. R. Civ. P. 56(e). However, when, as is the case here, the statement at issue is not identified as being made on information and belief and the context demonstrates that the affiant had personal knowledge of the stated facts, the court may rely on the assertion in evaluating the motion for summary judgment. *Murray v. Bath Iron Works Corp.*, 867 F. Supp. 33, 38 n.5 (D. Me. 1994). The request to strike is denied.

[6] The plaintiffs ask that this paragraph of the defendants' statement of material facts be stricken on the same basis asserted in their challenge to paragraph 9. *See* footnote 5 above. The request is denied for the same reason.

and Ivey, as well as other attorneys and representatives of each of the clients, although the same individuals did not attend all of the sessions.  Defendants' SMF ¶ 20; Glenwood Responsive SMF ¶ 20; Keeper Springs Responsive SMF ¶ 20.

During the course of the mediations, demand letters were sent to Nestlé on April 21, 2003.  *Id.* ¶ 26.  The letter sent on behalf of Vermont Pure, Keeper Springs and Glenwood made a demand of $150 million to settle their claims.  *Id*.  The letter sent on behalf of the class made a demand of $65 million, as well as a demand that Nestlé take certain actions with regard to labeling, monitoring and use of water sources.  *Id*.  A demand letter on behalf of Carrabassett was sent to Nestlé on May 16, 2003 explaining Carrabassett's claim and stating that Carrabassett would settle its claims for $47 million.  *Id.* ¶ 27.  During the mediation sessions Nestlé made it clear that settlement of the consumer class claims was important to it and that the other claims would not be settled unless the settlement included the consumer class claims.  *Id*. ¶ 28.[7]  That position never changed.  *Id*.  On May 29, 2003 the group of potential plaintiffs began to prepare for litigation.  *Id*. ¶ 30.[8]

On May 30, 2003 Schlictmann called Sobol.  *Id*. ¶ 32.  He was distraught and wished to formalize a five-day extension of a grace period for an additional week for mediation discussions.  *Id.*  Sobol told him that he disagreed but saw that as an appropriate topic to raise with the team as a whole.  *Id*.  Schlichtmann agreed to set up a group call for later that day.  *Id*.  A group call was conducted later on May 30, 2003  among all competitor claimants and all counsel except Schlichtmann.  *Id*. ¶ 33.  The parties discussed whether it was necessary to contact Nestlé that day with respect to the grace period and agreed to let the weekend pass and convene a teleconference on

---

[7] The plaintiffs seek to strike this paragraph of the defendants' statement of material facts on the same basis as their request to strike paragraphs 9 and 18.  For the reasons already discussed, the request is denied.

[8] The plaintiffs purport to deny this paragraph of the defendants' statement of material facts but their denials do not address this factual assertion, Glenwood Responsive SMF ¶ 30; Keeper Springs Responsive SMF ¶ 30, which is supported by the citation given.  It is accordingly deemed admitted.  If the plaintiffs mean their request to strike based on "inadmissible hearsay," *id*., to apply to this (*continued on next page*)

Monday morning to discuss next steps.  *Id.*  Schlichtmann was not on the call because he had flown to New Jersey to meet Nestlé's attorneys without the authorization of Sobol or Ivey.  *Id.* ¶ 34.[9]  At Schlichtmann's direction, Ehrlich called Sobol's office that day and left a message terminating their attorney-client relationship, *id.*, and indicating  that she wanted to terminate Sobol's representation of the class, as well as the representation of Ivey and Max Stern, *id.* ¶ 35.  She told Sobol that Schlichtmann had told her to do so.  *Id.*

Also on May 30, 2003 Sobol was advised that Schlichtmann was purporting to terminate the joint counsel agreement, demanding a renegotiation of the terms of the fee division set forth in that document and demanding that he be given "free rein" to attempt to settle all claims with Nestlé.  *Id.* ¶ 36.[10]  On June 4, 2003 a meeting was held at the offices of Nestlé's counsel in New Jersey.  *Id.* ¶ 38.[11]  On June 5, 2003 Sobol and Ivey were advised that late on the previous night, Schlichtmann had settled the case with Nestlé, information that turned out to be false.  *Id.* ¶ 42.[12]  On Friday, June 6, 2003, Sobol and Ivey learned that there had not been a settlement of the case on June 4, 2003. *Id.* ¶ 44.[13]

On Monday, June 9, 2003, Kevin Berry, as attorney for Vermont Pure, advised Schlichtmann that his representation of Vermont Pure had been terminated.  *Id.* ¶ 45.  The termination was based on

---

sentence of paragraph 30 in the defendants' statement of material facts, it is clear that the sentence does not constitute hearsay and the request is therefore denied.

[9] Again, the plaintiffs raise their objection to the form of the Sobol affidavit cited as authority for this paragraph of the defendants' statement of material facts.  Glenwood Responsive SMF ¶ 34; Keeper Spring' Responsive SMF ¶ 34.  The request is denied for the reasons previously discussed.  The plaintiffs also contend that the paragraph is "predicated on inadmissible hearsay."  *Id.*  None of the portions of that paragraph which are included in the text of this opinion, as presented by Sobol's affidavit, constitute hearsay.

[10] The plaintiffs make the same objections and requests with respect to this paragraph of the defendants' statement of material facts as they did with respect to paragraph 34.  *See* note 9 above.  The requests are denied for the same reasons.

[11] The plaintiff s purport to deny this paragraph of the defendants' statement of material facts, but their denials do not address this factual assertion, Glenwood Responsive SMF ¶ 38; Keeper Springs Responsive SMF ¶ 38, which is supported by the citation given to the administrative record and accordingly is deemed admitted.

[12] See footnote 11 above.  In addition, this statement is not hearsay.

[13] See footnote 12 above.

the fact that Schlichtmann had conveyed an offer to Berry and his client which was not in fact an offer but rather a number that counsel had agreed to recommend to their clients. *Id*. ¶ 46.

On June 17, 2003 Sobol wrote a letter to Christopher H. Bartle and others outlining his understanding of Nestlé's proposal to resolve all claims. Keeper Springs SMF ¶ 13; Defendants' Keeper Springs Responsive SMF ¶ 13.  In this letter Sobol indicated that he believed that the proposed settlement was inadequate in several respects. *Id*. ¶ 14.  He indicated that Hagens Berman and Ivey & Ragsdale would move forward with potential litigation against Nestlé. *Id*. ¶ 15.  Through its lawyer P. Kent Correll, Keeper Springs advised Sobol and Ivey by letter dated June 18, 2003 that it regarded the proposed settlement as a "good one for Keeper Springs," it wished to conclude the settlement, it wanted Hagens Berman and Ivey & Ragsdale to do whatever they could to conclude the settlement and it wanted Hagens Berman and Ivey & Ragsdale to refrain from doing anything that might jeopardize the settlement. *Id*. ¶ 16.

Also on June 18, 2003, Sobol notified the competitor claimants that litigation had been filed in connection with consumer claims but not on behalf of any Lanham Act plaintiffs.  Defendants' SMF ¶ 52; Glenwood Responsive SMF ¶ 52; Keeper Springs Responsive SMF ¶ 52.[14]  On the same date, Stern, Sobol and Ivey filed a class action lawsuit on behalf of consumers in the Middlesex County Superior Court in Massachusetts. *Id*. ¶ 53. On that date, Nestlé learned that Hagens Berman, Sobol and/or Berman had a website on the internet posting information on the lawsuits and had publicized the story in the media.  Glenwood's Second SMF ¶¶ 43-44; Glenwood's Second Responsive SMF ¶¶ 43-44.[15]  On subsequent dates in June, additional class action lawsuits were filed by the attorneys in other

---

[14] The plaintiffs purport to deny this paragraph of the defendants' statement of material facts but their denial does not address the factual assertions in this sentence.  Glenwood Responsive SMF ¶ 52; Keeper Springs Responsive SMF ¶ 52.  Because these assertions are supported by the cited record evidence, the sentence is deemed admitted.

[15] The defendants contend that these paragraphs of the plaintiffs' statement of material facts should be stricken as immaterial or irrelevant.  Defendants' Second Responsive SMF ¶¶ 43-44.  They are neither.

states.  Defendants' SMF ¶ 53; Glenwood Responsive SMF ¶ 53; Keeper Springs Responsive SMF ¶ 53.  On June 19, 2003 Sobol was advised that Carrabassett and Glenwood wished to terminate his services as their attorney.  *Id*. ¶ 54.[16]  Keeper Springs did not ask Sobol and Ivey to stop the consumer class litigation and it continued to retain Hagens Berman and Ivey & Ragsdale for at least another year, during which it considered suggestions that it should file litigation against Nestlé and that it participate in some fashion in the consumer class case.  *Id*. ¶ 56.[17]

On June 23, 2003 Carrabassett and Glenwood filed a complaint and motion for preliminary injunction against Sobol and Ivey and their law firms in the Massachusetts Superior Court, seeking to restrain them from filing lawsuits or otherwise prosecuting the consumer class claims.  *Id*. ¶ 57.  On June 30, the requested injunction was denied.  *Id*. ¶ 58.[18]  Sobol then made numerous requests to the plaintiffs' counsel to sit down and try to resolve any issues.  *Id*. ¶ 59.[19]   On August 21, 2003 the plaintiffs dismissed their lawsuit in Massachusetts and filed this action in Maine.  *Id*. ¶ 60.

On July 14, 2003 Schlichtmann e-mailed Max and told him that Ehrlich would be represented at a mediation by attorney Robert Foote of Illinois.  *Id*. ¶ 61.  On July 15, 2003 Max sent a letter to Schlichtmann, Foote and three attorneys for Nestlé confirming that there would be a mediation on July 24 of the class claims against Nestlé.  *Id*. ¶ 63.  On July 29, Foote and attorney Kathleen Chavez filed

---

[16] The plaintiffs purport to deny this paragraph of the defendants' statement of material facts but their denial does not address the factual assertions in this sentence.  Glenwood Responsive SMF ¶ 54; Keeper Springs Responsive SMF ¶ 54.  Because these assertions are supported by the cited record evidence, the sentence is deemed admitted.

[17] The plaintiffs request that this paragraph of the defendants' statement of material facts be stricken on the basis of their oft-repeated contentions about Sobol's affidavit, which is the record evidence cited in support of this paragraph.  Glenwood Responsive SMF ¶ 56; Keeper Springs Responsive SMF ¶ 56.  For the reasons already discussed, this request is denied.  The plaintiffs also assert that the paragraph is "predicated on inadmissible hearsay as to Glenwood and Carrabassett."  *Id*.  It is not apparent on the face of the cited paragraph that any of the factual assertions made therein is based on hearsay.  Sobol Aff. ¶ 50.  In the absence of any evidence that such is the case, the request to strike is denied.

[18] The plaintiffs request that this paragraph of the defendants' statement of material facts be stricken on the basis of their oft-repeated contentions about Sobol's affidavit, which is the record evidence cited in support of this paragraph.  Glenwood Responsive SMF ¶ 58; Keeper Springs Responsive SMF ¶ 58.  For the reasons already discussed, this request is denied.  Nor does the portion of the paragraph repeated in the text constitute hearsay, as the plaintiffs contend.  *Id*.

[19] The plaintiffs purport to deny this paragraph of the defendants' statement of material facts, but the denial is not supported by citation to any record evidence.  Glenwood Responsive SMF ¶ 59; Keeper Springs Responsive SMF ¶ 59.  The defendants' assertion is (*continued on next page*)

a class action complaint in Illinois against Nestlé.  *Id*. ¶ 64.  On August 20, 2003 the plaintiff in that case and Nestlé presented a proposed nationwide settlement to the Illinois court, which entered a preliminary approval order on the same date.  *Id*.  Before the Illinois action was filed, Nestlé had removed all of the other pending state class actions to federal court.  *Id*. ¶ 65.  Nestlé did not remove the Illinois action.  *Id*.

On September 30, 2003 Stern, Ivey and Sobol filed petitions to intervene in the Illinois action along with objections to the settlement.  *Id*. ¶ 66.  The court denied the petitions to intervene and requests for additional discovery.  *Id*.  Attorney Joshua Tardy from Maine, who represented Glenwood and Carrabassett, neither of which was a party to the Illinois action, attended a hearing before the Illinois court on October 20 and 21, 2003 on the proposed class settlement.  *Id*. ¶ 67.[20]  On November 5, 2003 the Illinois court entered an order approving the settlement of the consumer class claims nationwide.  *Id*. ¶ 68.

After the Illinois class settlement, Nestlé agreed to purchase Carrabassett of Maine for $1,575,000.000.  *Id*. ¶ 71.  Both Glenwood and Carrabassett Spring Water Company, Inc. signed documents releasing any claims they had against Nestlé for $25,000.00.  *Id*. ¶ 72.  Nestlé paid Schlichtmann a fee; its counsel "does not recall" what this fee was for, or otherwise withheld the reason for the payment claiming a "privileged communication."  *Id*. ¶ 74.  Stern did not agree to the class settlement aspect of the "global settlement" claimed by the plaintiffs.  *Id*. ¶ 76.

The owners and principals of Keeper Springs are Bartle and Robert F. Kennedy, Jr.  *Id*. ¶ 80.  Bartle is a lawyer who has represented the River Keepers against the United States Environmental

---

accordingly deemed admitted, because it is supported by the record evidence cited.

[20] The plaintiffs ask the court to strike "[t]he statement about who Attorney Tardy represented" because "the only record citation is to Sobol's affidavit" which they contend should be disregarded for the reasons already discussed and rejected. Glenwood Responsive SMF ¶ 67; Keeper Springs Responsive SMF ¶ 67.  In fact, two citations are given in support of that sentence in the defendants' statement of material facts.  Defendants' SMF ¶ 67.

Protection Agency in litigation which has been ongoing since 1991. *Id*. ¶¶ 82-83. Kennedy is a practicing attorney and teaches environmental law at Pace University. *Id*. ¶ 84. Keeper Springs retained Correll in the fall of 2002. *Id*. ¶ 86. Bartle testified that he was, and is, confident in Correll's competence to advise and represent Keeper Springs' interests in these matters. *Id*. ¶ 88.[21] Bartle's first contact with the potential claims involving Poland Spring was a call from Schlichtmann in the spring of 2002. *Id*. ¶ 91. Bartle concluded that even if Keeper Springs could not be a plaintiff in claims involving Poland Spring, Keeper Springs would benefit from the litigation; he wanted the litigation to level the playing field for Keeper Springs in the spring water market. *Id*. ¶ 92.[22] He was willing to act as an expert for the consumer class litigation being contemplated. *Id*.

Bartle understood that the purpose of the joint litigation agreement was to protect the group from competing plaintiffs and to protect confidentiality as it related to Nestlé, as well as to protect financial information. *Id*. ¶ 96. Bartle knew that Keeper Springs needed separate representation for one or more reasons. *Id*. ¶ 98. He agrees that Sobol raised the issue of potential conflicts of interest between the consumer class and the competitor class and discussed with him the need for written waivers. *Id*. ¶ 99.[23] Bartle testified that he understood the nature of the "separate interests" issues in the case. *Id*. He understood the competitor issue as distinguished from the class issues. *Id*. ¶ 100.

---

[21] Glenwood Farms and Carrabassett assert that this paragraph of the defendants' statement of material facts should be stricken "as inadmissible hearsay as to" them. Glenwood Responsive SMF ¶ 88. Keeper Springs makes no such argument. Keeper Springs' Responsive SMF ¶ 88. Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Bartle's testimony during his deposition about his own beliefs and opinions is not hearsay "as to" anyone.

[22] Glenwood and Carrabassett make the same objection to this paragraph as they did to paragraph 88 of the defendants' statement of material facts. Glenwood Responsive SMF ¶ 92. My ruling is the same. *See* footnote 21 above.

[23] The plaintiffs purport to deny this paragraph of the defendants' statement of material facts, but their denial does not address the substance of the paragraph, merely asserting that "[n]o such discussions or disclosures occurred with respect to Glenwood or Carrabassett." Glenwood Responsive SMF ¶ 99; Keeper Springs Responsive SMF ¶ 99. The paragraph has nothing to do with either Glenwood or Carrabassett. The plaintiffs also raise the hearsay objection discussed in footnote 21 above. My ruling is the same.

Keeper Springs prepared a memorandum on the public relations steps to be taken to file suit. *Id.* ¶ 105.[24] Keeper Springs did not fire any of the defendants. *Id.* ¶ 107.

Kevin Berry participated in drafting the joint litigation and confidentiality agreement. *Id.* ¶ 114. He added the provisions regarding common interest materials. *Id.* ¶ 115. He had discussions with Bartle before his client, Vermont Pure, agreed to participate with the group in making claims against Nestlé. *Id.* ¶ 117.[25] Bartle told Berry that Schlichtmann and others had obtained documents which supported the claims against Nestlé. *Id.* ¶ 118.[26] Bartle told Berry that if Vermont Pure agreed to become part of the group Vermont Pure would always be able to use the documents to proceed with claims against Nestlé. *Id.* Bartle specifically assured Berry that Vermont Pure would have access to the materials if the case proceeded to litigation. *Id.*

Berry was not present at the June 4, 2003 meeting between the parties and Nestlé. *Id.* ¶ 121. He discussed the meeting and the settlement discussions with Schlichtmann by telephone either that day or the next. *Id.* After Berry terminated Schlichtmann, he called Jeffrey Garrod, counsel for Nestlé, directly. *Id.* ¶ 122. On June 5, 2003 Berry wrote that Vermont Pure would agree to settle its claims against Nestlé if Vermont Pure received a specific sum of money and if several other conditions were met, including that the payment be made within a certain amount of time and that the payment was not contingent on approval of the class settlement. *Id.* ¶ 124.

Vermont Pure commenced suit against Nestlé in the United States District Court for the District of Massachusetts. *Id.* ¶ 131. Berry is co-counsel for Vermont Pure in that action along with Sobol and Ivey. *Id.* The action is still pending. *Id.* At all times during May and June 2003 Berry understood

---

[24] Glenwood and Carrabassett repeat their assertion that this paragraph of the defendants' statement of material facts is "inadmissible hearsay as to" them. Glenwood Responsive SMF ¶ 105. I repeat my ruling.

[25] *See* footnote 24 above.

[26] *See* footnote 24 above.

that the terms and the amount of money being proposed to settle the claims of the consumer class were not acceptable to Stern, Sobol and Ivey.  *Id*. ¶ 132.[27]

On November 15, 2004 Sobol executed quitclaim deeds transferring his residence at 44 Burley Street, Danvers, Massachusetts, and certain property at 47 Essex Street in Beverly, Massachusetts, to his wife, Meredith Sobol, each for a nominal fee of $1.00.  Statement of Material Facts Not in Dispute Pursuant to Local Rule 56(b) in Support of Plaintiffs' Motion for Partial Summary Judgment ("Plaintiffs' Sobol SMF") (Docket No. 163) ¶¶ 2-3; Defendant Sobol's Reply to Plaintiffs' Statement of Material Facts, etc. ("Sobol's Responsive SMF") (Docket No. 177) ¶¶ 2-3.  He currently lives in the Burley Street property.  *Id*. ¶ 8.  The Essex Street property was originally purchased as a residence for the Sobols' nanny but is now rented out to tenants.  *Id*. ¶ 9.  Sobol does not own any other real estate, with the possible exception of co-ownership of his ex-wife's house.  *Id*. ¶ 10.

Sobol testified that the transfers were made on the recommendation of a lawyer whom he had consulted for estate planning.  *Id*. ¶ 4.  He testified that he could not remember the lawyer's name or the name of the law firm.  *Id*. ¶ 5.  He contacted the lawyer in late 2003 or early 2004.  Defendant Sobol's Statement of Additional Undisputed Material Facts ("Sobol's SMF") (included in Sobol's Responsive SMF, beginning at page 2) ¶ 1; Plaintiffs' Response to Defendants Sobol's Statement of Additional Undisputed Material Facts ("Plaintiffs' Sobol Responsive SMF") (Docket No. 190) ¶ 1.[28] He testified that the gross sale price of the Burley Street property would be about $750,000 and that it may be subject to a mortgage of up to $500,000.  Plaintiffs' Sobol SMF ¶ 6; Sobol's Responsive SMF

---

[27] The plaintiffs move to strike this paragraph of the defendants' statement of material facts as "predicated on inadmissible hearsay." Glenwood Responsive SMF  ¶ 132; Keeper Springs Responsive SMF  ¶ 132.  The record evidence cited by the defendants in support of this paragraph is Berry's affidavit.  Defendants' SMF ¶¶ 110, 132.  Berry's sworn statement about his own understanding is not hearsay.

[28] The plaintiffs deny this paragraph of Sobol's statement of material facts, Plaintiffs' Sobol Responsive SMF ¶ 1, but there is no dispute that Sobol testified that this was the approximate time when he first consulted the estate planning lawyer.

¶ 6.  He testified that the Essex Street property was worth between $300,000 and $375,000 but that 80 to 90 per cent of its assessed value was subject to a mortgage.  *Id*. ¶ 7.

After Sobol transferred the Essex Street and Burley Street properties to his wife, he still had $500,000 to $1 million in assets, excluding the personalty in the Burley Street residence.  Sobol's SMF ¶ 11; Plaintiffs' Sobol Responsive SMF ¶ 11.

### III.  Discussion

### A.  Fraudulent Transfer

The Glenwood plaintiffs' first motion for partial summary judgment addresses their claims against Sobol as set forth in Counts 33 and 34 of the First Amended Complaint.  Plaintiffs' Motion for Partial Summary Judgment, etc. ("Fraudulent Transfer Motion") (Docket No. 162) at. 1. They contend that Sobol's transfer to his wife on November 15, 2004 of two residential properties in Massachusetts was a violation of 14 M.R.S.A. § 3575.  *Id*. at 2-7.  That statute provides, in pertinent part:

> **1.  Fraudulent transfer.**  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> **A.**  With actual intent to hinder, delay or defraud any creditor of the debtor; or
>
> **B.**  Without receiving a reasonably equivalent value in exchange for the transfer or obligations and the debtor:
>
> **(1)**  Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> **(2)**  Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as the debts became due.
>
> **2.  Determination of actual intent.**  In determining actual intent under subsection 1, paragraph A, consideration may be given, among other factors, to whether:
>
> **A.**  The transfer or obligation was to an insider;
>
> **B.**  The debtor retained possession or control of the property transferred after the transfer;
>
> \* \* \*

      **E.** The transfer was of substantially all the debtor's assets;

* * *

      **H.** The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred . . . .

14 M.R.S.A. § 3575.

      Sobol first argues in response that the Maine statute does not apply because choice-of-law analysis requires that the Massachusetts fraudulent transfer statute be applied to this claim.  Defendant Sobol's Objection and Memorandum in Opposition to Plaintiffs' Partial Motion [sic] for Summary Judgment ("Sobol Opposition") (Docket No. 178) at 3-5.  Because the two states' versions of the Uniform Fraudulent Transfer Act differ in the definition of "assert," Sobol asserts, choice-of-law provisions require that a dispute concerning interests in real estate be governed by the law of the state in which the real estate is located.  *Id*. at 3-5.  Sobol does not discuss whether the Glenwood plaintiffs are entitled to summary judgment under the Massachusetts statute; he merely asserts that the Glenwood plaintiffs are not entitled to summary judgment on this claim because they have not alleged a violation of the Massachusetts statute.  *Id*. at 5.

      The Glenwood plaintiffs point out in their reply that the defendants "raised this very choice-of-law issue in their Objection to Plaintiffs' Motion to Amend Complaint."  Plaintiffs' Reply to Defendant Sobol's Objection to Motion for Partial Summary Judgment ("Sobol Reply") (Docket No. 189) at 1.  Since this court rejected that argument at the time, the Glenwood plaintiffs contend, it is law of the case that the Massachusetts version of the uniform statute does not apply to this claim.  *Id*. at 2.  My decision on the motion to amend the complaint rejected a claim that the Maine fraudulent transfer statute cannot reach property located outside the state of Maine, Memorandum Decision on Plaintiffs' Motion to Amend Complaint (Docket No. 118) at 4-5, a different argument from that made by Sobol here.  However, Sobol's objection to my decision did squarely raise the argument he raises now.

Defendants' Objection and Memorandum in Opposition to Magistrate Cohen's Memorandum Decision Partially Granting Plaintiffs' Motion to Amend Complaint (Docket No. 120) at 3-4.  This argument was necessarily rejected by the court when it subsequently affirmed my decision.  Docket No. 125. The doctrine of law of the case forecloses reconsider of this argument at this time.

Sobol next argues that summary judgment under the Maine statute is not appropriate because seven of the eleven factors listed in 14 M.R.S.A. § 3575(2) weigh in his favor.  Sobol Opposition at 5-6.  The statute merely lists factors, "among other factors," which a court may consider in determining whether a debtor had the actual intent to defraud a creditor.  It does not require a court to give each listed factor equal weight, so that a court may merely add up the factors favoring either side of a claim and thereby determine the winner.  If there is a factual dispute as to one or more of the listed factors, a defendant may avoid summary judgment under the statute.  Sobol testified that he did not transfer the two properties at issue with the intent to defraud any creditor, Sobol's SMF ¶ 10, a contention which the plaintiffs deny, Plaintiffs' Sobol Responsive SMF ¶ 10.  The question for the court at this point in connection with a motion for summary judgment is whether the court may disregard Sobol's testimony, as the Glenwood plaintiffs contend.

The Glenwood plaintiffs approach this question first by asserting that they do not need to prove intent.  Sobol Reply at 5-7.  They contend that the undisputed evidence demonstrates that Sobol reasonably should have believed that he would incur debts beyond his ability to pay, citing 14 M.R.S.A. § 3575(1)(B)(2).  *Id*.  It is certainly true that Sobol knew at the time of the transfer that a lawsuit had been brought against him, that some of the claims in that action were not covered by his professional liability insurance and that "millions of dollars were at stake" in the lawsuit.  *Id*. at 6. However, that is not sufficient to allow the entry of summary judgment for the Glenwood plaintiffs under the Maine statute.  The conclusion that a reasonable attorney in Sobol's circumstances at the

relevant time should have believed that he would incur debts beyond his ability to pay as a result of this lawsuit does not follow inevitably from these facts.

In the alternative, the Glenwood plaintiffs contend that Sobol's testimony that he had no intent to hinder, delay or defraud any creditor when he transferred the properties cannot be credited, because he "has again failed to corroborate the estate planning scenario with specifics, despite the obvious opportunity to do so." *Id*. at 7. This is an inappropriate argument in the context of summary judgment. The applicable legal standard requires a court to view the record in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences in its favor. It does not allow the court to draw conclusions with respect to the credibility of proffered testimony. The Glenwood plaintiffs' argument in this instance goes to the weight of Sobol's testimony, a matter which this court may not consider in connection with their motion for summary judgment on the counts at issue. The Glenwood plaintiffs are not entitled to summary judgment on this basis.

Sobol also contends that the Glenwood plaintiffs' release of defendants Garve Ivey and Ivey & Ragsdale in connection with their settlement with those defendants "would . . . partially release Sobol" and would therefore reduce the Glenwood plaintiffs' potential recovery to an amount within the limits of insurance policies applicable to the claims against him, thus defeating this motion. Defendants Sobol and Hagens Berman Sobol Shapiro LLP's Motion for Leave to File Sur-Reply . . . in Opposition to Plaintiffs' Motion for Partial Summary Judgment (Docket No. 194) at 1-2. I have already concluded that the release executed by the Glenwood plaintiffs of their claims against Ivey and Ivey & Ragsdale "does not affect the Plaintiffs' claims against the remaining defendants either by setting a ceiling on the amount ultimately recoverable against the remaining defendants or by effectively eviscerating the Plaintiffs' claim against defendant Sobol under Maine's version of the Uniform Fraudulent Transfer Act." Memorandum Decision on Motion for Attachment (Docket No.

270) at 2-3.  That conclusion requires rejection of this argument against the motion for partial summary judgment, should the court reach this issue.

## B.  Affirmative Defenses

The Glenwood plaintiffs' second motion for partial summary judgment challenges four affirmative defenses asserted by Sobol and Hagens Berman, specifically those affirmative defenses numbered 7, 11, 14 and 16. Plaintiffs Glenwood Farms, Inc. and Carrabassett Spring Water Company, Inc.'s Motion for Partial Summary Judgment on Affirmative Defenses, etc. ("Affirmative Defense Motion") (Docket No. 252) at 3-4, 10.  These affirmative defenses are stated as follows by Sobol and Hagens Berman:

> 7.  Plaintiffs' damages, if any, were caused by the actions of third parties.
>
> * * *
>
> 11.  Plaintiffs' claims are barred by the doctrine of waiver.
>
> * * *
>
> 14.  Plaintiffs' claims are barred by the fact that they received advice from their own counsel regarding their actions and the agreements that they signed.
>
> * * *
>
> 16.  Plaintiffs' claims are barred by the learned intermediary doctrine.

Answer of Defendants Thomas M. Sobol and Hagens Berman, LLP to Plaintiffs' First Amended Complaint (Docket No. 126) at 24.

With respect to the affirmative defenses numbered 7, 14 and 16, the Glenwood plaintiffs present the same arguments.  They assert that these defenses all "manifest" Sobol and Hagens Berman's theory that Joshua Tardy, Esq. and his law firm, who were retained by Glenwood Farms, and Nelson Willick, who  was retained by Carrabassett Spring Water Company, were counsel independent of Sobol and his law firm who should have warned and advised them with respect to any possible conflicts of interest from which Sobol and his law firm may have suffered during their representation of the Glenwood plaintiffs.  Affirmative Defense Motion at 2-3.  Sobol and his law firm

respond that "the retention of independent counsel in this case is irrefutable evidence that Plaintiffs were in fact advised on the very conflict of interest that they claim in this case they knew nothing about." Defendants' Objection and Memorandum of Law in Opposition to Plaintiffs' Motions for Partial Summary Judgment ("Defendants' Consolidated Opposition") (Docket No. 298) at 31.

The Glenwood plaintiffs first contend that, because these defendants characterized Tardy and Willick as joint venturers with the Sobol defendants, among others, in their proposed third-party complaint, they are bound by the doctrine of "judicial admissions" and cannot also contend that Tardy and Willick were third parties or "learned intermediaries" whose participation mitigates or negates their own liability. Affirmative Defense Motion at 5. I denied (Docket No. 217) the motion of Sobol and his law firm for leave to file this proposed third-party complaint (Docket No. 177). "A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Schott Motorcycle Supply, Inc. v. American Honda Motor Co.*, 976 F.2d 58, 61 (1st Cir. 1992) (citation omitted). However, "a pleading should not be construed as a judicial admission against an alternative or hypothetical pleading in the same case." *Id*. Assuming *arguendo* that an allegation in a proffered but disallowed pleading is sufficient to allow application of the doctrine of judicial admission, it is clear in this case, as Sobol and his law firm contend, Defendants' Consolidated Opposition at 30, that the allegation that Tardy and Willick were joint venturers was asserted in the alternative with respect to the affirmative defenses at issue. The Glenwood plaintiffs take nothing by this argument.

They move on to contend that the "learned intermediary doctrine" applies only to product liability claims for prescription drugs and therefore cannot be invoked by Sobol and his law firm in this case. Affirmative Defense Motion at 6. Sobol and his law firm do not respond to this argument, perhaps because it is supported by applicable case law. The "learned intermediary rule" applies to a

21

failure-to-warn product-liability claim involving a prescription drug; in such a case the manufacturer's duty to warn runs to the physician (the learned intermediary) rather than to the patient. *Doe v. Solvay Pharms., Inc.*, 350 F.Supp.2d 257, 270 (D. Me. 2004). The rationale of the doctrine is that the prescribing physician is in the best position to evaluate the potential risks and benefits of ingesting a certain drug. *Id*. (quoting *Garside v. Osco Drug, Inc.*, 976 F.2d 77, 80 (1st Cir. 1992)). This rationale cannot be stretched to differentiate between the duties of class counsel and individual counsel for the same party in a particular lawsuit to advise the client about conflicts of interest possibly or actually affecting class counsel. The Glenwood plaintiffs are entitled to summary judgment on the sixteenth affirmative defense asserted by Sobol and his law firm.

The next argument offered by the Glenwood plaintiffs is that the services for which Tardy and Willick were engaged were clearly limited to matters other than advice on potential or actual conflicts of interest involving Sobol and his law firm. Affirmative Defense Motion at 7-9. They cite directly to deposition transcripts "filed herewith" in support of this argument, rather than to any statement of material facts. *Id*. Such evidentiary citations are unacceptable in support of a motion for summary judgment in this court and the facts so asserted will be disregarded. *See, e.g., Pew v. Scopino*, 161 F.R.D. 1, 1 (D. Me. 1995) ("The parties are bound by their [Local Rule 56] Statements of Fact and cannot challenge the court's summary judgment decision based on facts not properly presented therein."). This argument, addressed to Affirmative Defenses 6 and 14, Affirmative Defense Motion at 9, is unsupported by properly presented facts. *See also* Plaintiffs' Reply Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment on Affirmative Defenses ("Affirmative Defense Reply") (Docket No. 320) at 5-7.[29] The plaintiffs accordingly are not entitled to summary judgment on those two affirmative defenses.

---

[29] The plaintiffs raise for the first time in their reply memorandum the argument that any consent that may have been given to any
(*continued on next page*)

Affirmative defense number 11 invokes the doctrine of waiver.  The Glenwood plaintiffs contend that they are entitled to summary judgment on this defense because none of the written agreements involved in the case "contained adequate disclosures for a valid written waiver." Affirmative Defense Motion at 10.  Again, their argument is supported only by citations to deposition testimony of various expert witnesses "filed herewith," and not to any paragraph in any statement of material facts.  *Id*. at 10-11.  For the reasons stated above, summary judgment will not be granted when the necessary supporting uncontested facts are not properly presented in accordance with Local Rule 56.  The Glenwood plaintiffs are not entitled to summary judgment on this affirmative defense.

### C.  Fiduciary Duty

All of the plaintiffs move for summary judgment on their claims against  Sobol and Berman for breach of fiduciary duty.  Plaintiffs Glenwood Farms, Inc. and Carrabassett Spring Water Company, Inc.'s Motion for Partial Summary Judgment on Breach of Fiduciary Duty Claims, etc. ("Glenwood Fiduciary Duty Motion") (Docket No. 255) at 1 & Plaintiff Tear of the Clouds LLC's Motion for Partial Summary Judgment on Claims for Breach of Fiduciary Duty, etc. ("Keeper Springs Motion") (Docket No. 261) at 1.[30]  The Glenwood plaintiffs also move for summary judgment on their identical claim against Hagens Berman LLP.  Glenwood Fiduciary Duty Motion at 1.  Keeper Springs also moves for summary judgment on its identical claim against Ivey and Ivey & Ragsdale.  Keeper Springs Motion at 1.  Sobol, Berman and their law firm have filed a consolidated response to the two motions.  Defendants' Consolidated Opposition.  Ivey and his law firm have filed a response to Keeper Springs' motion that merely incorporates by reference the Sobol Hagens Berman opposition and their

conflicts of interests was revoked by Sobol's conduct.  Affirmative Defense Reply at 6-7.  This court will not consider arguments presented for the first time in reply memoranda.  *Cambridge Mut. Ins. Co. v. Patriot Mut. Ins. Co.*, 323 F.Supp.2d 95, 106 (D. Me. 2004).

[30] Plaintiff Tear of the Clouds LLC has requested oral argument on this motion.  Docket No. 269.  Because the written submissions fully present the parties' respective positions, the request is denied.

own "previously filed motion for summary judgment." Objection of Defendants Garve Ivey and Ivey & Ragsdale to Plaintiff Tear of the Cloud [sic] LLC's Motion for Partial Summary Judgment on Claims for Breach of Fiduciary Duty, etc. (Docket No. 308) at 1. All of the defendants have filed a joint response to Keeper Springs' statement of material facts in support of its motion. Defendants' Response to Plaintiff Tear of the Cloud [sic] LLC's Statement of Material Facts Not in Dispute (Docket No. 306) at 1. Ivey and Ivey & Ragsdale have also moved for summary judgment on this claim. Motion for Summary Judgment of Defendants Garve Ivey and Ivey & Ragsdale, etc. ("Ivey Ragsdale Motion") (Docket No. 262) at 1.

The Glenwood plaintiffs have presented expert testimony on this claim; Keeper Springs has not. All of the plaintiffs contend that they need not present expert testimony on this claim in order to prevail. Glenwood Fiduciary Duty Motion at 3-4; Keeper Springs Motion at 7 n.1. Expert testimony is not required in order for a factfinder to determine whether a lawyer breached his or her fiduciary duty to a client. *Mangan v. Rumo*, 226 F.Supp.2d 250, 254 (D. Me. 2002). None of the parties disputes that the plaintiffs and the defendants had an attorney-client relationship at the relevant time.

The Glenwood plaintiffs begin by arguing that the defendants may not rely on their affirmative defenses based on waiver and "independent counsel." Glenwood Fiduciary Duty Motion at 7-8. I have recommended above that the court reject this argument, as it was presented in the separate motion of the Glenwood plaintiffs for summary judgment on those affirmative defenses. Given this conclusion, and the fact that the Glenwood plaintiffs offer no argument to the effect that they could prevail on this claim even if the defendants could prove their affirmative defenses at trial, *see generally* Glenwood Fiduciary Duty Motion & Plaintiffs' Reply Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment on Claims for Breach of Fiduciary Duty (Docket No.

319), there is no need to consider the arguments of the Glenwood plaintiffs on the merits. Their motion for summary judgment on this claim should be denied.

The defendants against whom Keeper Springs asserts its breach-of-fiduciary-duty claims have raised the same affirmative defenses. Answer of Defendant Thomas M. Sobol to Complaint & Demand for Jury Trial of Plaintiff Tear of the Clouds, LLC (Docket No. 142) at 14 (Affirmative Defenses Nos. 8, 12, 15, 17); Answer of Defendants Garve Ivey and Ivey & Ragsdale to Complaint & Demand for Jury Trial of Plaintiff Tear of the Clouds, LLC (Docket No. 143) at 14-15 (Affirmative Defenses Nos. 7, 11, 14, 16). Keeper Springs does not address the affirmative defenses as such in its memorandum in support of its motion for summary judgment, but it does address the substance of one or more of these defenses in a section of its memorandum discussing arguments that it anticipates these defendants will make. Keeper Springs Motion at 12-20.

Keeper Springs contends that "a fundamental conflict of interest arose" after the defendants began to represent both it and the putative consumer class. *Id.* at 9. Keeper Springs asserts that only potential conflicts of interest existed when it entered into an attorney representation agreement and a joint litigation and confidentiality agreement with the defendants, and that an actual conflict arose "immediately prior to and on June 18, 2003" when Ivey and Sobol commenced litigation against Nestlé on behalf of the putative consumer class, because that litigation jeopardized the proposed settlement between Keeper Springs and Nestlé which Keeper Springs had instructed the defendants not to jeopardize. *Id*. at 10-11. However, in order to demonstrate a breach of Ivey and Sobol's fiduciary duty to Keeper Springs, Keeper Springs must also prove that Ivey and Sobol knew or reasonably should have known that Nestlé would withdraw its settlement offer to Keeper Springs as a result of their filing suit on behalf of their other clients.[31] There is no undisputed, properly presented material

---

[31] Keeper Springs asserts that it is the defendants' burden to prove that they did not violate their fiduciary obligations. Keeper Springs (*continued on next page*)

factual evidence of this element of the claim in the summary judgment record.  There is, at best, disputed evidence to this effect, Keeper Springs' SMF ¶¶ 9, 17, 19; Defendants' Keeper Springs Responsive SMF ¶¶ 9, 17, 19,[32] but disputed evidence is insufficient to provide the basis for summary judgment.  Keeper Springs' motion for summary judgment should be denied.

### D.  Tortious Interference

The Glenwood plaintiffs' next motion for partial summary judgment concerns their claims for tortious interference with an economic relationship against Sobol, Berman and Hagens Berman. Plaintiffs' Motion for Partial Summary Judgment on Claims for Tortious Interference with Economic Relations, etc. ("Tortious Interference Motion") (Docket No. 258) at 1.  This claim is asserted in Counts 8 and 24 of the First Amended Complaint.  Specifically, the Glenwood plaintiffs contend that they "had a prospective economic advantage — *ie*. [sic] an advantageous settlement proposal from Nestlé — with which the Hagens Berman Defendants tortiously interfered."  *Id*. at 3.  The plaintiffs cite only Maine law in connection with this claim; the defendants refer to both Maine and Massachusetts law.  I will consider both.

---

Motion at 18.  Maine law is less than clear on this point.  *See Niehoff v. Shankman & Assocs. Legal Ctr., P.A.*, 763 A.2d 121, 124 (Me. 2000) (burden of proof is on plaintiff in legal malpractice action and same rules of causation apply whether claim sounds in contract, negligence or breach of fiduciary duty).  The parties contend that the rules of professional conduct of Massachusetts, Defendants' Consolidated Opposition at 3-4; Keeper Springs Motion at 7, or Alabama, Keeper Springs Motion at 7, apply.  Keeper Springs cites no case law from either state in support of its position on the burden of proof.  *Id*. at 18.  Alabama law appears to place the burden on the plaintiff in such cases.  *See, e.g., Tonsmeire  v. AmSouth Bank*, 659 So.2d 601, 603-04 (Ala. 1995) (requiring plaintiff to present evidence of breach of fiduciary duty by bank officer); *Williams v. Citizens Nat'l Bank of Shawmut*, 570 So.2d 635, 638  (Ala. 1990) (upholding summary judgment on claim of breach of fiduciary duty by lawyer because plaintiff presented no evidence in opposition to motion for summary judgment showing that defendant lawyer had breached a duty).  The parties do not cite, and I was unable to locate, any Massachusetts case law on point.  Of the cases cited by Keeper Springs  in support of its position, only one, *Barbara A. v. John G.*, 193 Cal.Rptr. 422, 432 (Cal. App. 1983), actually provides any support, and that case involved the application of a California statute.  I do not find the reasoning in that case to be persuasive for interpretation of Maine, Massachusetts or Alabama common law.  I need not resolve this issue because, as set forth in the text following this footnote, I conclude that disputed issues of material fact bar summary judgment on this claim regardless of which party bears the burden of proof.

[32] The defendants also ask the court to strike paragraph 19 of Keeper Springs' statement of material facts as speculative, lacking in foundation and not drawn from personal knowledge.  Defendants' Keeper Springs Responsive SMF ¶ 19.  The only authority cited in support of the paragraph is a 9-page section of the deposition of Max, the mediator.  I agree that the cited portion of the deposition transcript does not display any facts that would allow a factfinder to conclude that Max's testimony was based on his own personal knowledge.  Paragraph 19 is therefore stricken.

Under Maine law,

> [t]o establish the tort of interference with an advantageous relationship, a plaintiff must show a valid contract or prospective economic advantage, interference with that contract or advantage through fraud or intimidation, and damages proximately caused by the interference.

*Northeast Coating Techs., Inc. v. Vacuum Metallurgical Co.*, 684 A.2d 1322, 1325 (Me. 1996)

(citation omitted).  Under Massachusetts law,

> the plaintiff must proffer admissible evidence sufficient to warrant findings that establish (1) the existence of a contract or a business relationship which contemplated economic benefit; (2) the defendant's knowledge of the contract or business relationship; (3) the defendant's intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages.

*Bourque v. Cape Southport Assocs., LLC*, 800 N.E.2d 1077, 1082-83 (Mass. App. 2004) (citation

and internal punctuation omitted).

Much of the evidence cited by the Glenwood plaintiffs in support of their motion on this claim is not taken from their statement of material facts and accordingly may not be considered by the court. Tortious Interference Motion at 3-7.  The Glenwood plaintiffs assert that the Sobol Hagens Berman defendants "purposefully interfered with the mediation process, among other acts threatening to release facts about the Poland Spring Water controversy to CBS News unless certain demands were met." *Id*. at 5.  Not only do the only record citations offered in support of this assertion refer to documents rather than to paragraphs in a statement of material facts as required by this court's Local Rule 56, but the contention that the defendants interfered with the mediation process is not the equivalent of a claim that the defendants interfered with a prospective economic advantage.  The prospective economic advantage here is the settlement offered to the plaintiffs by Nestlé, not the mediation process itself.

The Glenwood plaintiffs next contend that the Sobol Hagens Berman defendants "made good on their threats and did in fact release the story to CBS News, among other media" "in a move calculated to derail Plaintiffs' settlement offer with Nestlé." *Id.* Again, the only citations offered in support of this assertion are to documents rather than to paragraphs in a statement of material facts. *Id.* at 5-6. The same problem affects the Glenwood plaintiffs' next assertion, that these defendants "also generated adverse publicity to Nestlé through their bottledwaterfraud.com website, which also had the intended effect of causing Nestlé to back off from the proposed settlement." *Id*. at 6. Even if the Glenwood plaintiffs had properly placed any undisputed factual evidence before the court in support of these assertions, their conclusory assertions — that the cited actions constituted "acts of intimidation and misconduct" and that the results were "intended" by the Sobol Hagens Berman defendants — are not the only conclusions which necessarily follow from those facts.[33] Neither "adverse publicity" nor releasing a "story" to the media can reasonably be interpreted only as constituting intimidation of Nestlé or as improper conduct by the Sobol Hagens Berman defendants. Nor does either action require the drawing of an inference of improper motive, specifically of intent to deprive the Glenwood plaintiffs of the prospective settlement.[34]

The Glenwood plaintiffs are not entitled to summary judgment on Counts 8 and 24.

---

[33] Indeed, the evidence proffered by the Glenwood plaintiffs establishes that the alleged "threat" had no effect on the proposed settlement. They aver that Nestlé "back[ed] off" from settlement negotiations only after the defendants "made good on" the "threat" to take the "story" to the media. Tortious Interference Motion at 5.

[34] The same is true of the paragraphs of their statement of material facts which the Glenwood plaintiffs do cite in support of this motion. Tortious Interference Motion at 3. Of those twelve paragraphs, seven are denied by the defendants. Plaintiffs Glenwood Farms, Inc. and Carrabassett Spring Water Company, Inc.'s Statement of Material Facts Not in Dispute (Docket No. 259) ¶¶ 16-21, 27; Defendants' Consolidated Responsive SMF ¶¶ 16-21, 27 (beginning at page 24). The remaining qualified and admitted paragraphs do not provide undisputed material evidence sufficient to establish the Glenwood plaintiffs' claims as a matter of law. *Id.* ¶¶ 22-26. The defendants' request to strike all of these paragraphs because they duplicate paragraphs in one or more other statements of material facts submitted by the Glenwood plaintiffs in support of other motions for partial summary judgment is denied.

### E.  Misappropriation of Confidential Information

The Glenwood plaintiffs next seek summary judgment on Counts 5 and 21 of the First Amended Complaint, which allege misappropriation of confidential information.  Plaintiffs' Motion for Partial Summary Judgment as to Liability on Counts 5 and 21, etc. ("Misappropriation Motion") (Docket No. 268) at 1.  They contend that both Maine and Massachusetts law impose a duty of confidentiality on an attorney with respect to information learned in the course of representation of a client, as well as a duty not to use such information to the client's detriment.  *Id*. at 6-7.  The Sobol Hagens Berman defendants breached this duty, they assert, by Sobol's issuance of a press release on June 18 2005; posting confidential information on the bottledwaterfraud.com website; and including confidential information in the class action complaints filed on behalf of the consumer class.  *Id*. at 8-9.

The Glenwood plaintiffs fail to identify the information included in the press release which they contend was confidential client information.  In the absence of such specification, as well as any developed argument, this claim cannot be considered further.  *See Pearl Invs., LLC v. Standard I/O, Inc.*, 257 F.Supp.2d 326, 355 (D. Me. 2003).

With respect to the second alleged breach, the Glenwood plaintiffs assert that the following confidential client information was posted on the website by the Sobol Hagens Berman defendants:

> The discussion on the website "Home Page" indicating "Your bottled water may not be what you think" and that water companies often use common groundwater, is the basic premise communicated to attorney Schlichtmann by Will Foord.

> Six photographs "pertaining to the concerns with Poland Spring sources" on "Home Page" section of Website were taken by a provided by [sic] Will Foord.

> Information contained in "Background" section of Website concerning underlying theories of complaint filed by Defendants, including claims that (1) Nestlé's [sic] falsely advertises Poland Spring water as being "found deep in the woods of Maine," "exceptionally well protected by Nature"; (2) Nestlé falsely claims that Poland Spring Water is "naturally purified," or

"spring water" because the water does not meet the scientific definition of spring water; and (3) Poland Spring Water is contaminated and comes from wells built near a trash dump or where human sewage was sprayed is information taken from the investigation performed by Will Foord.

Response to a "Frequently asked Question": "Where does Nestle [sic] actually get the water for Poland Spring?" listing the various sources and risks of contamination of Poland Spring sources is derived entirely from research performed by Will Foord.

Finally, the Complaints field [sic] and made available on the website are replete with verbatim excerpts from Will Foord's research as Outlined [sic] below.

Misappropriation Motion at 10-11.  The last paragraph of this list lacks the necessary specificity for consideration by this court in connection with the Glenwood plaintiffs' motion.

This list is taken verbatim from paragraph 30 of the statement of material facts submitted by the Glenwood plaintiffs in support of the motion  at issue.  Plaintiffs' Statement of Material Facts Not in Dispute [Submitted in Support of Plaintiff's [sic] Motion for Partial Summary Judgment as to Liability on Counts 5 and 21, etc.]  ("Glenwood Misappropriation SMF") (Docket No. 267) ¶ 30.  The defendants ask that this paragraph be stricken "because it states a legal conclusion, rather than a statement of fact, or is otherwise unsupported by competent testimony from Shaw or Foord grounded in personal knowledge rather than self-serving, conclusory assertions."  Defendants' Consolidated Responsive SMF Section IV (beginning at page 36) ¶ 30.  They do not deny, admit or qualify the paragraph as an alternative response, so the paragraph must be deemed admitted to the extent that the asserted reasons for striking the paragraph are rejected.  I conclude that the introductory sentence of the paragraph, not repeated in the motion, asserting that the listed material constitutes "confidential and secret information" does state a legal conclusion and will not be considered.  However, for the purpose of specifying the material posted on the website which the Glenwood plaintiffs contend is confidential client information, the only use which I make of it, the paragraph is otherwise

unobjectionable.   The affidavits cited in support of the paragraph by the Glenwood plaintiffs demonstrate the affiants' personal knowledge of this information.  Affidavit of Henry Shaw (Exh. H to Docket No. 267) ¶¶ 3-10; Affidavit of William Foord, M.D. (Exh. N to Docket No. 267) ¶¶ 2, 5-8.

With respect to the third alleged breach, the Glenwood plaintiffs contend that the following confidential client information was disclosed in the state-court complaints filed by the Sobol Hagens Berman defendants on behalf of the consumer class:

> ¶ 7: lists three theories concerning how Nestlé is misleading the public.

> ¶ 8: explains why Nestlé's advertising is false and discusses tests proving Poland Spring Water comes from contaminated or compromised sources.

> ¶ 9: lists and described [sic] the four sources of Poland Spring Water.

> ¶¶ 18-25 and 27-28: describes Nestlé's deceptive advertising and explains that Poland Spring Water is neither natural nor spring water.

> ¶¶ 29-48: details the history of Poland Spring Water sources from the 1860s through 2002.

> ¶¶ 49-51: describes and provides background underlying Nestlé's four sources for Poland Spring Water.  In particular, ¶ 49 contains almost verbatim language taken from the Will Foord Chronology at p. 10.

> ¶¶ 52-59: describes and details "Poland Spring," the original source for Poland Spring Water, and explains how Nestlé has falsely advertised its product.

> ¶¶ 60-68: describes and details "Garden Spring," another source for Poland Spring Water, and explains how Nestlé has falsely advertised its product.

> ¶¶ 69-72: describes and details "Clear Spring," another source for Poland Spring Water, and explains how Nestlé has falsely advertised its product.

> ¶¶ 73-77: describes and details "Fryeburg Facility," another source for Poland Spring Water, and explains how Nestlé has falsely advertised its product.

Misappropriation Motion at 11. The Glenwood plaintiffs cite paragraphs 28 and 29 of their statement of material facts in support of this list. *Id.* The defendants deny the allegations in paragraph 29 and qualify paragraph 28. Defendants' Consolidated Responsive SMF Section IV ¶¶ 28-29. Because the denial is supported by the citations given by the defendants, the Glenwood plaintiffs may not rely on paragraph 29. Paragraph 28 provides, in its entirety:

> On or about July 18, 2003, the Defendants caused a class action complaint to be filed in Connecticut.

Glenwood Misappropriation SMF ¶ 28. This paragraph cannot possibly be construed to provide sufficient factual support for the argument that the Sobol Hagens Berman defendants misappropriated confidential client material in connection with the filing of this or any other complaint.[35] My analysis will accordingly be limited to the claims associated with the website.

The Glenwood plaintiffs contend that Maine law applies to this claim, Misappropriation Motion at 7 n.2, and the Sobol Hagens Berman defendants do not dispute the point, Defendants' Consolidated Opposition at 37-40. The case law cited by the Glenwood plaintiffs, however, establishes nothing beyond the fact that Maine law recognizes a common-law duty of confidentiality running from the lawyer to the client. *Sargent v. Buckley*, 697 A.2d 1272, 1275 (Me. 1997). Resolution of the issue posed by the Glenwood plaintiffs' motion requires a definition of what information is confidential for purposes of this duty. For this, the Glenwood plaintiffs rely on the Restatement (Third) of the Law Governing Lawyers. Misappropriation Motion at 7-8.

The relevant sections of the Restatement provide:

> (1) Except as provided in §§ 61-67, during and after representation of a client:
>    (a) the lawyer may not use or disclose confidential client information as defined in § 59 if there is a reasonable prospect that doing so will adversely

---

[35] I note that paragraph 29 does not provide support for the specific information listed in the motion. *Compare* Glenwood Misappropriation SMF ¶ 29 *with* Misappropriation Motion at 11.

> affect a material interest of the client or if the client has instructed the lawyer
> not to use or disclose such information[.]

Restatement (Third) of the Law Governing Lawyers (2000) § 60.

> Confidential client information consists of information relating to
> representation of a client, other than information that is generally known.

*Id.* § 59.  Sections 61 through 67 of the Restatement are not applicable to the facts of this claim.  The Glenwood plaintiffs rely heavily on note *b* to section 59 of the Restatement which states, in part: "This definition covers all information relating to representation of a client . . . .  It covers information gathered from any source . . . .  The definition includes information that becomes known by others, so long as the information does not become generally known."

Here, the Glenwood plaintiffs assert that "[i]t is undisputed that the materials and investigation leading up to the Poland Spring mediation effort were not 'generally known.'"  Misappropriation Motion at 9.  If by "the materials" this sentence means the information listed as having been posted on the website, the summary judgment record does not establish that this information was not generally known.  The paragraphs of the supporting statement of material facts cited by the Glenwood plaintiffs, *id.*, may not reasonably be construed to establish that this information was not generally known, Glenwood Misappropriation SMF ¶¶ 5, 11-13, 19.  The Glenwood plaintiffs are not entitled to summary judgment on this basis.

While the failure of the Glenwood plaintiffs to establish that the information at issue was not generally known by itself makes summary judgment unavailable to them under section 60 of the Restatement, I note that their alternate argument on this count also fails.  They contend that "[i]t is also undisputed that both Glenwood and Carrabassett specifically instructed Sobol 'to preserve and facilitate the settlement agreement with Nestlé,' and that he was forbidden 'to take action which might undermine the settlement agreement.'"  Misappropriation Motion at 9.  They assert that "such

instruction was tantamount to specific instruction to maintain client confidentiality." *Id*. This argument stretches interpretation of the specific instructions well beyond any reasonable inference.

### F.  Hagens Berman Defendants' Motion

Sobol, Hagens Berman and Berman move for summary judgment on all claims asserted against them by both the Glenwood plaintiffs and Keeper Springs.  Defendants Sobol, Hagens Berman Sobol Shapiro LLP, and Steve Berman's Motion for Summary Judgment, etc. ("Sobol Hagens Berman Motion") (Docket No. 260) at 1.   The Glenwood plaintiffs' claims include negligence, breach of contract, breach of the implied covenant of good faith and fair dealing, misappropriation of confidential information, breach of fiduciary duty, conversion and tortious interference with economic relations against all three Sobol Hagens Berman defendants.  First Amended Complaint, Counts 2-8, 18-24.  They also include claims of fraudulent transfer against Sobol.  *Id*. Counts 33-34.  The Glenwood plaintiffs seek punitive damages against all three Sobol Hagens Berman defendants.  *Id.* Counts 1, 17.  Keeper Springs asserts claims against Sobol and Berman, but not Hagens Berman, for negligence, breach of contract, breach of the implied covenant of good faith and fair dealing, misappropriation of confidential information, breach of fiduciary duty, conversion and tortious interference with economic relations; it also seeks punitive damages.  Complaint and Demand for Jury Trial ("Keeper Springs Complaint") (Docket No. 1 in case No. 05-30-P-S, subsequently consolidated with the instant case) Counts I-VII.

*1. The Global Arguments*

The Sobol Hagens Berman defendants begin by offering a global argument: that they were under no duty to act to the detriment of their other clients and that the plaintiffs could not prevent them from representing the consumer class.  Sobol Hagens Berman Motion at 11-22.  However, this argument can succeed only if the defendants could not have withdrawn from representing either the

plaintiffs or the consumer class, a proposition for which there is no supporting evidence in the summary judgment record.  The plaintiffs do not contend that the Sobol Hagens Berman defendants could not have withdrawn from representing either them or the consumer class.  I will not consider these arguments further.

The Sobol Hagens Berman defendants turn next to their affirmative defense of equitable estoppel.  *Id*. at 22-24.  Essentially, they contend that the fact that each plaintiff hired independent counsel in connection with their claims against Nestlé, standing alone, estops them from asserting that the defendants breached any duty to them.  *Id*.  They assert that the case of *Gorham Sav. Bank v. MacDonald*, 710 A.2d 916 (Me. 1998),[36] "is closely on point," and that "[t]he existence of separate and independent counsel in this case, for each Plaintiff, fundamentally bars Plaintiffs from proceeding with any aspect of their present claims."  *Id*. at 22, 24.

Contrary to the Sobol Hagens Berman defendants' position, *MacDonald* is not dispositive.  In that case, the Maine Law Court held that a trial court did not err by instructing a jury that a beneficiary could be estopped from reliance on a breach-of-fiduciary-duty defense if the jury found that any representative of the beneficiary "made statements or engaged in conduct which led the [fiduciary] to reasonably believe that the interests of [the beneficiary] were being protected by [the representative]." 710 A.2d at 919.  In no sense does the Law Court's opinion require a finding of estoppel upon a certain set of facts.  The paragraphs of their statement of material facts on which the Sobol Hagens

---

[36] The parties differ on the question of which state's law should apply to the plaintiffs' common-law claims in this case, *see* Sobol Hagens Berman Motion at 10-11 (arguing that Massachusetts law applies); Plaintiff Tear of the Clouds LLC's Opposition to Defendants Thomas Sobol and Steve Berman's Motion for Summary Judgment, etc. ("Keeper Springs Opposition") (Docket No. 307) at 2 n.1 (arguing that New York law applies).  However, these parties agree that the substantive law in each jurisdiction is essentially the same. *Id.* The Glenwood plaintiffs take no position on this issue. *See generally* Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, etc. ("Glenwood Opposition") (Docket No. 297).  I will discuss the issue by referring to Maine case law whenever possible.

Berman defendants rely, Sobol Hagens Berman Motion at 23-24, to the extent that they are undisputed,[37] do not establish an equitable estoppel as a matter of law.

The Sobol Hagens Berman defendants' next global argument is that the facts do not allow a reasonable factfinder to conclude that any duty was breached. Sobol Hagens Berman Motion at 24-26. Since some of the claims against them are not predicated on the existence of a duty, *see, e.g.*, Amended Complaint Counts 3, 4, 7, 19-21, 23, this argument, which does not address any count specifically, is somewhat curious. The argument is based on the contention that "[n]othing the [Sobol Hagens Berman] Defendants did gave Nestlé a better defense, nor made Plaintiffs' case any worse." Sobol Hagens Berman Motion at 25. That, of course, is not what the Glenwood plaintiffs claim. The gravamen of their complaint is that the defendants by their actions deprived the Glenwood plaintiffs of a settlement offer which they found to be advantageous and intended to accept. While it may be true, as the Sobol Hagens Berman defendants contend, that they never "stop[ped] each Plaintiff from actively negotiating their separate interests directly with Nestlé," *id*., that also is not what the Glenwood plaintiffs claim. There is sufficient evidence in the summary judgment record to support the breach-of-duty claims in the terms in which those claims are cast by the Glenwood plaintiffs.

The next salvo fired by the Sobol Hagens Berman defendants is an assertion that the "Plaintiffs have no way of proving to a factfinder that the proposal [for settlement] they contend they lost would have been achieved." *Id*. at 26. Without expert testimony as to causation, they contend, the Glenwood plaintiffs' case "fails as a matter of law." *Id*. Again, this argument does not appear to apply to all of the claims asserted against the Sobol Hagens Berman defendants. *See, e.g.,* Amended Complaint

---

[37] The Sobol Hagens Berman defendants cite paragraphs 10-16, 23-24, 90, 98-99, 110-13 and 127 of their statement of material facts. Sobol Hagens Berman Motion at 23-24. The responses of all three plaintiffs to these paragraphs are identical. Paragraphs 10, 12-16, 23, 99, 111-13 and 127 are denied. Plaintiffs' Response to Defendants' Statement of Material Facts, etc. ("Glenwood Responsive SMF") (Docket No. 304) ¶¶ 10, 12-16, 23, 99, 111-13, 127; Plaintiff Tear of the Clouds LLC's Opposing Statement of Material Facts, etc. ("Keeper Springs Responsive SMF") (Docket No. 310) ¶¶ 10, 12-16, 23, 99, 111-13, 127. The Glenwood (*continued on next page*)

Counts 5, 7-8, 21, 23-24. The Sobol Hagens Berman defendants cite no authority for the proposition that claims for conversion and misappropriation are subject to the same requirement of expert proof as to causation merely because they are asserted against attorneys, and I am aware of none.

The Glenwood plaintiffs respond that the claims of breach of fiduciary duty are subject to a reduced burden of establishing causation. Glenwood Opposition at 22-23. They cite a number of cases decided in the Second Circuit. *See, e.g., Milbank, Tweed, Hadley & McCloy v. Boon*, 13 F.3d 537, 543 (2d Cir. 1994); *Estate of Re v. Kornstein Veisz & Wexler*, 958 F. Supp. 907, 927 (S.D. N.Y. 1997). *See also ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 508 F. Supp. 798, 803 (S.D.N.Y. 1981) (applying same standard to interference with settlement). The *Boon* standard has been adopted in Massachusetts. *Resolution Trust Corp. v. Gladstone*, 895 F. Supp. 356, 369 n.19 (D. Mass. 1995) (adopting *Boon* standard). The Sobol Hagens Berman defendants contend that this court should not adopt the *Boon* standard because a federal court "sitting in diversity is not the appropriate forum" for adoption of "a novel route to recovery, heretofore unaddressed or contradicted by express holdings in state common law." Defendants' Reply Memorandum in Support of Summary Judgment ("Glenwood Reply") (Docket No. 324) at 3. They offer no citations or other evidence that the *Boon* standard is unaddressed or contradicted by Massachusetts common law, however. The Sobol Hagens Berman defendants also point out that a different judge of the federal district court in Massachusetts appears to have disagreed with the judge who decided *Gladstone*, *id*. at 4, but in that unreported case, *Sentinel Prods. Corp. v. Platt*, 2002 U.S.Dist.LEXIS 13217 (D. Mass. July 22, 2002), at *5 -*6, the court appears to conflate negligence and breach-of-fiduciary-duty claims. It is accordingly unclear whether the two opinions do differ on the use of the *Boon* standard. I conclude that, if Massachusetts law

---

plaintiffs' motion to strike paragraph 90 as hearsay, Glenwood Responsive SMF ¶ 90, is denied.

applies to the fiduciary duty claims, the *Boon* standard applies and the Glenwood plaintiffs have made a sufficient evidentiary showing to prevent the entry of summary judgment against them.

The Sobol Hagens Berman defendants make no showing that the Maine Law Court has contradicted the *Boon* standard. The issue apparently has not been squarely presented to the Law Court, but in a footnote in *Steeves v. Bernstein, Shur, Sawyer & Nelson*, 718 A.2d 186, 189 n.8 (Me. 1998), the Law Court cited a case from the Utah Court of Appeals for the proposition that "generally the same rules of causation apply whether the cause of action sounds in contract, negligence, or breach of fiduciary duty." It repeated this phrase in *Niehoff v. Shankman & Assocs. Legal Ctr., P.A.*, 763 A.2d 121, 124 (Me. 2000). In neither case is this statement made in the context of deciding whether expert testimony as to causation is required, however. Both hold that the question whether the plaintiff's damages were either a direct result or a reasonably foreseeable consequence of the attorney's action or failure to act must be proved beyond a mere possibility; speculation or conjecture is insufficient. *Steeves*, 718 A.2d at 190; *Niehoff*, 763 A.2d at 124. *Niehoff* is instructive for the instant case because it involved alleged negligence resulting in a lost opportunity, making it "more problematic" for a plaintiff to demonstrate that a more favorable result would have been achieved but for the alleged negligence. 763 A.2d at 124. In such a case, the plaintiff must prove negligence which caused the plaintiff to lose an opportunity to achieve a result favorable to the plaintiff which the law allows and the facts submitted by the plaintiff would support if believed by a jury. *Id*. at 125. The Glenwood plaintiffs' submissions in this case meet this standard, when viewed in the light most favorable to them as required by the summary judgment standard, whether the particular claim at issue is negligence or breach of fiduciary duty.

The Sobol Hagens Berman defendants' specific argument with respect to the negligence claims is based on their assertions that "a component of the [settlement] proposal included resolution and

extinguishment of the consumer class claims" and that "no jury can determine that the class component of the Schlichtmann deal would have been approved, by any court." Sobol Hagens Berman Motion at 26, 28. The Sobol Hagens Berman defendants appear to argue both that only an expert witness can provide such evidence — testimony which the Glenwood plaintiffs have not offered — and that even an expert could not provide such testimony. *Id*. at 26-30. The latter argument, that it "is inconceivable that any court would have approved of treatment of the class claims under the Schlichtmann deal," *id*. at 29, sets forth a list of allegedly fatal problems with the proposed settlement without citing any record evidence, *id*. at 29-30. This court, when considering a motion for summary judgment, will not search through a party's statement of material facts looking for un-cited paragraphs that support a fact-specific argument made in that party's memorandum of law. In the circumstances, I will not consider the latter argument further. To the extent that the first argument survives under Maine law after *Niehoff* and may be valid under Massachusetts law, *see Frullo v. Landenberger*, 814 N.E.2d 1105, 1109-10 (Mass. App. 2004), the Glenwood plaintiffs have offered evidence, albeit disputed, that judicial approval was not required for settlement with the non-class plaintiffs to go forward. Glenwood's Second SMF ¶ 38; Defendants' Second Responsive SMF ¶ 38.[38]

Alternatively, the Sobol Hagens Berman defendants cite to paragraphs in the defendants' statement of material facts which they contend establish that Carrabassett, Nestlé and Vermont Pure "had not agreed to critical terms," and that Glenwood "had not agreed to significant terms." Sobol Hagens Berman Motion at 30. Of course, none of these assertions requires expert testimony. Of the nine cited paragraphs, seven are disputed by the plaintiffs. Defendants' SMF ¶¶ 125-27, 129, 133-35;

---

[38] The Sobol Hagens Berman defendants ask this paragraph of the Glenwood plaintiffs' statement of additional facts be stricken "because it is unsupported in all respects to the record citations provided." Defendants' Second Responsive SMF ¶ 38. I have reviewed those citations and find them to support the paragraph when construed as required by the summary judgment standard. Many of the defendants' specific objections go to the weight to be accorded the cited testimony; that is not a matter that may be resolved in connection with a motion for summary judgment.

Glenwood Responsive SMF ¶¶ 125-27, 129, 133-35; Keeper Springs Responsive SMF ¶¶ 125-27, 129, 133-35. The remaining two paragraphs, *id*. ¶¶ 124, 128, deal only with Vermont Pure and Glenwood. Even if sufficient evidentiary support for this argument had been presented in the summary judgment record, the plaintiffs' contention is that these differences could and would have been resolved if the settlement had not been scuttled by the filing of the class-action suits at a critical point in time. The cited evidence does not repudiate that argument.

The next Sobol Hagens Berman argument is that the plaintiffs could not have been harmed by the defendants' filing of the consumer class actions because those lawsuits would have been filed anyway. Sobol Hagens Berman Motion at 30-32. They assert that "Max Stern would have filed suit as separate counsel for the consumer class" and "Kevin Berry would have filed suit against Nestlé on behalf of Vermont Pure." *Id*. at 31. The paragraphs of their statement of material facts which the Sobol Hagens Berman defendants cite in support of this assertion are disputed by the plaintiffs. Defendants' SMF ¶¶ 75, 129-30; Glenwood Responsive SMF ¶¶ 75, 129-30. That alone makes it impossible to grant summary judgment on this basis. I note also that this argument does not address the timing of the potential filings, which could have had a significant impact on the viability of the proposed settlement, nor do the Sobol Hagens Berman defendants allege that Stern and Berry would also have done the other things that form the basis of the plaintiffs' claims — using allegedly confidential information and publishing settlement-related information on a website. These differences also make summary judgment unavailable based on this argument.

The next global argument offered by the Sobol Hagens Berman defendants is that settlement with Nestlé by Glenwood and Carrabassett in May 2004 bars their claims in this action. Sobol Hagens Berman Motion at 34-35. The Glenwood plaintiffs admit that, after the settlement of the consumer class action in Illinois, Glenwood sold a spring to Nestlé for a minimum of $1.5 million and

a maximum of $3.3 million; Nestlé agreed to purchase Carrabassett for $1,575,000.00; and both signed releases of any claims they had against Nestlé for $25,000.00. Defendants' SMF ¶¶ 70-72; Glenwood Responsive SMF ¶¶ 70-72. Without citation to authority, the Sobol Hagens Berman defendants assert that these releases bar the instant action. Sobol Hagens Berman Motion at 34-35. They conclude this argument by stating that the plaintiffs "gave their claim up for a pittance," and that this "should shock the conscience of this court." *Id*. at 35.

The fact that the Glenwood plaintiffs ultimately settled with Nestlé may affect their ability to obtain the amount of damages they seek but it does not serve to prevent them from seeking damages at all. Many factors, including the alleged actions of the defendants, may have affected the decision to settle, in the changed circumstances following the breakdown of settlement negotiations, rather than to sue Nestlé. If the defendants, as a consequence of their actionable conduct, put the plaintiffs into a situation where it was reasonable for the plaintiffs to accept far less than had previously been offered in settlement, they should not be able to escape the consequences of that action merely because the plaintiffs chose to take a reasonable course under those circumstances. Under Maine and Massachusetts law, mitigation is an affirmative defense, *Lee v. Scotia Prince Cruises Ltd.*, 828 A.2d 210, 216 (Me. 2003); *Black v. School Comm. of Malden*, 341 N.E.2d 896, 899 (Mass. 1976), and the Sobol Hagens Berman defendants thus have the burden of proof on this issue. They offer heated rhetoric to the effect that the Glenwood plaintiffs' subsequent settlements were unreasonable under the circumstances, but that is not the only conclusion that may be drawn from the evidence they cite. They are not entitled to summary judgment on this basis.

Finally, the Sobol Hagens Berman defendants assert that they are entitled to summary judgment on all claims because those claims are barred by the doctrine of illegality. Sobol Hagens Berman Motion at 40-44. They contend that "Plaintiffs seek to impose liability on Defendants for failing to

41

breach their ethical obligations to other clients (the putative national consumer class and Vermont Pure)," which would be illegal. *Id*. at 41-42. However, this is not what the plaintiffs seek. They contend that the defendants should have withdrawn from representing either them or the putative class at the crucial time, not that the defendants should have continued to represent both groups but have ignored their ethical obligations to the consumer class. Nothing about that course of action would necessarily be illegal or unethical.

The Sobol Hagens Berman defendants also contend that the proposed settlement "would have constituted a violation of federal and state criminal and civil antitrust laws" because Glenwood and Carrabassett, horizontal competitors of Nestlé, would have agreed to sell water to Nestlé and not to sell or use any other water from those sources. *Id*. at 42. This, they aver, "is a naked, per se violation of the Sherman Act." *Id*. They rely on paragraph 51 of their statement of material facts to support this argument. *Id*. That paragraph is denied by the plaintiffs. Glenwood Responsive SMF ¶ 51; Keeper Springs Responsive SMF ¶ 51. In addition, the Glenwood plaintiffs point out that only one Glenwood aquifer and one Carrabassett aquifer would be affected by the proposed settlement agreement. Glenwood Responsive SMF ¶ 51. In the absence of any attempt to show that Glenwood and Carrabassett each owned only a single aquifer and that these aquifers represented a significant segment of the bottled water market, no showing of an antitrust violation has been made. *See, e.g., Grappone, Inc. v. Subaru of New England, Inc.*, 858 F.2d 792, 799 (1st Cir. 1988).

2. *The Specific Arguments*

i. *Tortious Interference with Economic Relations*

The Sobol Hagens Berman defendants contend that they are entitled to summary judgment on Counts 8 and 24 of the Glenwood/Carrabassett amended complaint and Count VII of the Keeper Springs complaint because there was no "settlement contract" with which they could have interfered.

Sobol Hagens Berman Motion at 35. This is too narrow a statement of the plaintiffs' claim. I have already noted that interference with a prospective economic advantage gives rise to a cause of action under Maine law;[39] the defendant need not have caused the breach of a contract for the plaintiff to recover on such a claim.

In the alternative, the Sobol Hagens Berman defendants assert that "the Maine Law Court has in other tort contexts refused to base tort liability upon the filing of a legitimate lawsuit." *Id*. at 36. The problem with this argument is that the Law Court held in the case cited by the Sobol Hagens Berman defendants that "a party cannot be liable for intentional infliction of emotional distress for insisting on his or her rights in a permissible manner." *Davis v. Currier*, 704 A.2d 1207, 1209 (Me. 1997). Here, the defendants are not accused of insisting on *their* rights in a permissible manner; at best, they were insisting on facilitating the rights of third parties at a particular time and in a particular manner, something quite different. In addition, the tort at issue in this case is distinguishable from the tort at issue in *Davis*, where the Law Court carefully limited its ruling to the tort of intentional infliction of emotional distress. *Id*. The Sobol Hagens Berman defendants do not mention Massachusetts law in connection with this argument.

The final contention from the Sobol Hagens Berman defendants on this claim is that the plaintiffs cannot prove fraud and intimidation when others also filed suit against Nestlé. Sobol Hagens Berman Motion at 36. To the contrary, it is the specific parties on whose behalf the defendants filed suit and the time at which they did so that underlie the plaintiffs' claim and distinguish the defendants' alleged actions from the filings by Stern and Vermont Pure. The argument concerning fraud and intimidation as an element or elements of the tort is stated only in conclusory fashion and is

---

[39] Massachusetts law appears to be the same. *Buster v. George W. Moore, Inc.*, 783 N.E.2d 399, 414 (Mass. 2003).

not sufficiently developed to merit the court's attention.  *See Graham v. United States*, 753 F. Supp. 994, 1000 (D. Me. 1990).

*ii.  Misappropriation and Conversion*

The Sobol Hagens Berman defendants contend that the documents and information at issue in the conversion claim "were lawfully in the possession and control of the Defendants when all of the parties were openly and consensually in the Joint Litigation Agreement," and there has never been a demand from the plaintiffs for their return.  Sobol Hagens Berman Motion at 37.  Therefore, they assert, no claim for conversion can be made out.  *Id.*  The Glenwood plaintiffs respond that both their directive to the defendants not to file any class action suits and their filing of a complaint in Massachusetts state court seeking injunctive relief against Sobol and Ivey constitute a demand for purposes of their conversion claim.  Glenwood Opposition at 36 n.30.  In support of this argument they cite only a paragraph of the defendants' statement of material facts which they have denied.  *Id.*; Defendants' SMF ¶ 54; Glenwood Responsive SMF ¶ 54.  Characterizing either of these actions as a demand for return of the documents and information at issue is too great a stretch.  Under Maine law,[40] "[i]f the holder acquired possession rightfully, a demand by the person entitled to possession and a refusal by the holder to surrender is necessary before the withholding becomes a conversion." *General Motors Acceptance Corp. v. Anacone*, 160 Me. 53, 83 (1964).  The Glenwood plaintiffs do not argue that a demand would have been useless.  *See id.*  On the arguments and showing made, the Sobol Hagens Berman defendants are entitled to summary judgment on the conversion claims, Counts 7 and 23 of the Glenwood/Carrabassett Amended Complaint and Count VI of the Keeper Springs Complaint.[41]

---

[40] None of the parties mentions Massachusetts law with respect to these claims.
[41] Keeper Springs does not respond to the Sobol Hagens Berman defendants' arguments on this count.  Keeper Springs Opposition *passim*.

The sole mention of the misappropriation claim in the section of the Sobol Hagens Berman defendants' memorandum of law entitled "The 'Misappropriation' and 'Conversion' Torts Fail as a Matter of Law," is a suggestion that the misappropriation claims are intended to be an alternative means of alleging breach of contract and must fail because there has been no breach of the joint litigation agreement. Sobol Hagens Berman Motion at 36-37. To the extent that this undeveloped argument may even be considered by the court, it is based on a mischaracterization of the plaintiffs' claims. The defendants are not entitled to summary judgment on these counts on the showing made.

### iii.  Punitive Damages

The Sobol Hagens Berman defendants move on to challenge the plaintiffs' claims for punitive damages as being without evidentiary support. Sobol Hagens Berman Motion at 38-39. They correctly point out, *id*. at 38, that recovery of punitive damages is not a separate cause of action as the Glenwood plaintiffs have pleaded it, Amended Complaint Counts 1 & 17.[42] That error is not grounds for summary judgment, however. Under Maine law,[43] punitive damages are available on tort claims upon proof of actual malice or actions so outrageous that malice may be implied. *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985). The torts alleged in this case by the plaintiffs are supported by evidence from which a factfinder could reasonably infer malice. Nothing further is required at this stage of the proceedings.

In a footnote, the Sobol Hagens Berman defendants also contend that they are entitled to summary judgment on any claims for punitive damages because such damages are not available on contract claims under Maine or Massachusetts law and the tort claims are mere "recasting" of the

---

[42] Keeper Springs correctly includes a demand for punitive damages in the *ad damnum* clause of its complaint. Keeper Springs Complaint at 26.

[43] Again, none of the parties mentions Massachusetts law in connection with this aspect of the claim. Keeper Springs contends that New York law applies, Keeper Springs Opposition at 17, but that standard, while it includes gross negligence, is not significantly different from the Maine standard for purposes of the summary judgment motion. *See Giblin v. Murphy*, 532 N.E.2d 1282, 1284 (*continued on next page*)

plaintiffs' breach-of-contract claim. Sobol Hagens Berman Motion at 38 n.13. If the plaintiffs' breach-of-contract claims were somehow foreclosed as a result of their own action or inaction, and there were no alleged conduct by the defendants that could reasonably be deemed to be conduct independent of the breach of contract, there might be some merit to this argument. As it is, however, the plaintiffs are entitled to plead in the alternative. In addition, an intentional tort is conceptually different from a breach of contract. The culpable conduct is not identical. On the showing made, the defendants are not entitled to summary judgment on punitive damages.

### iv. Claims Against Berman

The Sobol Hagens Berman defendants argue that all of the plaintiffs' claims against Berman "contain[] neither allegations nor evidentiary support." Sobol Hagens Berman Motion at 39. They rely on paragraphs 77 and 78 of the defendants' statement of material facts to support their argument that the plaintiffs make no "serious attempt" to allege or prove Berman's personal liability. *Id.* However, both of those paragraphs are disputed by the plaintiffs. Defendants' SMF ¶¶ 77-78; Glenwood Responsive SMF ¶¶ 77-78; Keeper Springs Responsive SMF ¶¶ 77-78. That alone is sufficient to survive the motion for summary judgment. Berman's argument that the complaints fail to state a claim against him is incorrect as to the Glenwood plaintiffs. Paragraphs 5, 41, 51, 53 and 120 of the First Amended Complaint mention Berman specifically and most of the paragraphs can only be read to include him in the term "defendants." The question is somewhat closer, because the specific references to Berman are fewer, but the same is true of the Keeper Springs complaint. *See* Keeper Springs Complaint ¶¶ 4, 37, 47.

---

(N.Y. 1988).

*v. Counts 33 and 34*

The Sobol Hagens Berman defendants contend that "because Defendant Sobol is entitled to summary judgment on all Counts, summary judgment should moot Counts 33 and 34 of the Glenwood/Carrabassett First Amended Complaint." Sobol Hagens Berman Motion at 40. I have recommended denial of the Sobol Hagens Berman defendants' motion for summary judgment as to the majority of counts in both complaints. If the court adopts my recommendation, this argument obviously fails. The defendants raise anew their arguments "set forth in Defendants' objection to Plaintiffs' motion to amend their complaint to add these two counts." *Id.* They offer no suggestion why this court should change its ruling on those issues. That decision is law of the case. Docket Nos. 118, 125.

## G. Ivey Ragsdale Motion

Defendants Ivey and Ivey & Ragsdale seek summary judgment on all counts asserted against them by Keeper Springs. Ivey Ragsdale Motion at 1. To this end, they adopt the Sobol Hagens Berman motion for summary judgment and its attendant documents. *Id.* To the extent that the arguments of the Ivey Ragsdale defendants do not differ from those of the Sobol Hagens Berman defendants, I recommend that the same results apply to this motion. I address below the only argument raised by the Ivey Ragsdale defendants that may reasonably be construed as adding to or differing from the arguments made by the Sobol Hagens Berman defendants, the contention that the written agreements between Keeper Springs and the Ivey Ragsdale defendants bar Keeper Springs' claims. *Id.* at 9-11.

The Ivey Ragsdale defendants rely on two documents to support their argument. The first is an attorney representation agreement which Bartle, one of Keeper Springs' principals, reviewed carefully before signing.[44] For the relevant language from that agreement the Ivey defendants cite

---

[44] The Ivey Ragsdale defendants cite paragraph 95 of the defendants' joint statement of material facts in support of this factual (*continued on next page*)

paragraphs 6 and 11-14 of the defendants' joint statement of material facts. *Id*. at 4-5. However, Keeper Springs denied paragraphs 6 and 12-14 of that document. Keeper Springs Responsive SMF ¶¶ 6, 12-14 (adopting by reference Glenwood Responsive SMF ¶¶ 6, 12-14). The only content of that agreement which is properly before the court for consideration at this time is accordingly the following:

> [The attorney representation agreement] states that the attorneys intend to represent persons and classes of persons in litigation against the makers and marketers of "Poland Spring" water from three areas: (i) actual or potential competitors . . .; (ii) consumers of "home and office" distributed "Poland Spring" water; and (iii) consumers of retail "Poland Spring" water.

Defendants' SMF ¶ 11; Keeper Springs Responsive SMF ¶ 11 (incorporating by reference Glenwood Responsive SMF ¶ 11).

The other document on which the Ivey Ragsdale defendants rely is the joint litigation and confidentiality agreement signed by all of the parties. Ivey Ragsdale Motion at 5-6. The following language from that document is properly before the court:

> 1) Separate counsel, pursuant to a separate written engagement agreement, shall represent each Claimant's interests in the Poland Spring litigation.
>
> 2) To the extent any actual or potential conflicts of interest exists [sic] between and among Claimants (i.e., disputes regarding whether to settle and on what terms) based on any dissimilarity of interests, each Claimant waives any such conflict as it relates to the representations by Counsel in the Litigation.
>
> 3) Claimants have conferred with, and have been advised by, separate counsel on the benefits of joining and moving forward in the *Poland Spring* litigation and Claimants, relying on such advice, have expressly agreed to do so.

Defendants' SMF ¶ 24 (italics in original); Keeper Springs Responsive SMF ¶ 24 (incorporating by reference Glenwood Responsive SMF ¶ 24.

---

assertion. Ivey Ragsdale Motion at 4. I consider only that portion of that paragraph with which Keeper Springs has agreed. Keeper (*continued on next page*)

The language from the representation agreement quoted above cannot reasonably be read to waive the alleged conflict that arose when the defendants decided to file the consumer class-action lawsuits, allegedly knowing that doing so would deprive Keeper Springs of the proposed settlement with Nestlé. The language from the joint litigation and confidentiality agreement is capable of such interpretation, however.

Keeper Springs' opposition to the Ivey Ragsdale defendants' motion addresses only the representation agreement, citing repeatedly to provisions of that agreement which have not been made part of the summary judgment record through a statement of material facts. Plaintiff Tear of the Clouds LLC's Opposition to Defendants Garve Ivey and Ivey & Ragsdale's Motion for Summary Judgment, etc. ("Keeper Springs Ivey Opposition") (Docket No. 309) at 4-7.[45] Despite the fact that the court cannot consider factual material first presented in a party's memorandum of law, I conclude that the only language from the representation agreement properly before the court does not support the Ivey Ragsdale defendants' argument.

Keeper Springs' argument concerning the language in the joint litigation and confidentiality agreement, when it is finally located — in the Glenwood plaintiffs' opposition to the Sobol Hagens Berman motion for summary judgment — is that the language was insufficient to waive the conflict that

---

Springs Responsive SMF ¶ 95 (incorporating by reference Glenwood Responsive SMF ¶ 95).

[45] Keeper Springs incorporates by reference into its opposition to the Ivey Ragsdale motion its opposition to the Sobol Hagens Berman motion, Keeper Springs Ivey Opposition at 1, but that document also fails to address the joint litigation and confidentiality agreement as a source of waiver, Keeper Springs Opposition at 5-8. That document in turn incorporates by reference "Plaintiff Glenwood Farms, Inc. and Carrabassett Spring Water Company, Inc.'s Opposition to Defendants' Motion for Summary Judgment and all supporting documentation submitted in support of that motion [sic]." *Id.* at 1. I assume that this is a reference to Docket No. 297, the opposition to the Sobol Hagens Berman motion filed by Glenwood and Carrabassett. That document appears to refer to the joint litigation and confidentiality agreement, Glenwood Opposition at 12-15, and it in turn incorporates by reference Glenwood's motion for partial summary judgment on certain affirmative defenses, *id.* at 15. That document refers to the documents at issue here only by asserting that "Defendants' expert Alan Morrison . . . conceded that none of the written agreements themselves contained adequate disclosures for a valid written waiver. * * * Moreover, he testified that none of the documents gave . . . Ivey permission to undermine a settlement deal that Plaintiffs had with Nestlé . . . ." Affirmative Defense Motion at 10-11. This court expects counsel to present their complete response to any given motion for summary judgment in a single document rather than sending the court on a three-step search through other documents incorporated by reference. I will nonetheless consider the arguments addressing the joint litigation and confidentiality agreement in this case but counsel should not assume that the court will do so in the future.

developed because that was no disclosure that such a conflict might develop and because even a valid waiver of a future conflict does not allow an attorney to "actively pursue the ruin of one client for the benefit of another." Glenwood Opposition at 13-14 & n. 16. The evidence cited by the Glenwood plaintiffs in support of this argument is largely taken from original documents rather than being presented in a statement of material facts, *id.*, and accordingly may not be considered.

To the extent that Keeper Springs' argument with respect to the waiver language in the joint litigation and confidentiality agreement may be considered, the Restatement (Third) of the Law Governing Lawyers states that a lawyer may represent a client notwithstanding a conflict of interest if each affected client gives informed consent to the representation. Restatement (3d) of the Law Governing Lawyers § 122(1) (2000). "Informed consent requires that the client . . . have reasonably adequate information about the material risks of such representation to that client . . . ." *Id.* Conflict rules governing attorney behavior "are subject to waiver through informed consent . . . ." *Id.* comment *b.* "A client's consent will not be effective if it is based on an inadequate understanding of the nature and severity of the lawyer's conflict . . . ." *Id.* "A lawyer who does not personally inform the client assumes the risk that the client is inadequately informed and that the consent is invalid." *Id.* comment *c(i).* "A client independently represented — for example by inside legal counsel or by other outside counsel — will need less information about the consequences of a conflict but nevertheless may have need of information adequate to reveal its scope and severity." *Id.* "A client's open-ended agreement to consent to all conflicts normally should be ineffective unless the client possesses sophistication in the matter in question and has had the opportunity to receive independent legal advice about the consent." *Id.* comment *d.*[46]

---

[46] A prospective waiver is valid if it identifies the potential opposing party and the nature of the likely subject matter in dispute and permits the client to appreciate the potential effect of the waiver. *Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*, 142 F.Supp.2d 579, 583 (D. Del. 2001). The cited language from the joint litigation and confidentiality agreement appears to meet this (*continued on next page*)

In this case, it is not possible to tell from the cited language of the joint litigation and confidentiality agreement alone whether Keeper Springs was adequately informed under the circumstances of the risk, scope and severity of a possible dispute regarding whether to settle with Nestlé and on what terms, even though that is precisely the conflict which did occur and even though Keeper Springs had independent counsel.  I do not find persuasive or useful the distinction between consent to potential conflicts and consent to actual conflicts pressed by Keeper Springs.  Keeper Springs Opposition at 5-7.  The case cited by Keeper Springs in support of this distinction, *Blecher & Collins, P.C. v. Northwest Airlines, Inc.*, 858 F. Supp. 1442 (C.D.Cal. 1994), cites the decision of a California state court in *Elliot v. McFarland Unified Sch. Dist.*, 165 Cal.App.3d 562, 211 Cal.Rptr. 802, 805 (1985), for the point that an agreement at issue waived potential conflicts but that the parties did not agree to joint representation should an actual conflict arise; "[t]o the contrary, the agreement required [the parties] to seek separate counsel if any actual conflict arose."  858 F. Supp. at 1456.  No such requirement appears in the cited language from the joint litigation and confidentiality agreement.  In addition, the only evidence in the summary judgment record that would allow a reasonable factfinder to conclude that the Ivey Ragsdale defendants "actively pursue[d] the ruin of" Keeper Springs for the benefit of the consumer class, *see Schlesinger v. Herzog*, 672 So.2d 701, 709-10 (La.App. 1996), is very much in dispute.

The Ivey Ragsdale defendants' motion for summary judgment should be denied.

## IV.  Conclusion

For the forgoing reasons, I recommend that (i) the motion of plaintiffs Glenwood Farms, Inc. and Carrabassett Spring Water Company, Inc. for partial summary judgment on certain affirmative defenses (Docket No. 252) be **GRANTED** as to Affirmative Defense No. 16 in the answer filed by

---

standard as to Keeper Springs, given the sophistication of its two principals.  Defendants' SMF ¶¶ 80-85; Keeper Springs'
(*continued on next page*)

defendants Thomas M. Sobol, Steve W. Berman and Hagens Berman Sobol Shapiro LLP and otherwise **DENIED**; (ii) the other motions of plaintiffs Glenwood Farms, Inc. and Carrabassett Spring Water Company, Inc. for partial summary judgment (Docket Nos. 162, 255, 258, 268) be **DENIED**; (iii) the motion of plaintiff Tear of the Clouds LLC for partial summary judgment (Docket No. 261) be **DENIED**; (iv) the motion of defendants Sobol, Berman and Hagens Berman Sobol Shapiro LLP for summary judgment (Docket No. 260) be **GRANTED** as to Counts 7 and 23 in the amended complaint brought by Glenwood Farms, Inc. and Carrabassett Spring Water Company, Inc. (Docket No. 119) and Count VI of the complaint filed by Tear of the Clouds LLC (Docket No. 1 in Docket No. 05-30-P-S) and otherwise **DENIED**; and (v) the motion for summary judgment filed by defendants Garve Ivey and Ivey & Ragsdale (Docket No. 262) be **DENIED**.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 20th day of October, 2005.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

---

Responsive SMF ¶¶ 80-85.