UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| GLENWOOD FARMS, INC., et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Docket No. 03-CV-217-P-S |
| GARVE IVEY, et al., | ) ) ) |
| Defendants. | ) ) ) |

ORDER ON CHOICE OF LAW

Before the Court is Plaintiffs' Motion in Limine Seeking Ruling as to Applicability of Maine Law (Docket # 364) and Defendants' Motion in Limine Seeking Application of Massachusetts Law (Docket # 384).

These two motions raise the same choice of law question that must be resolved prior to trial. As explained below, the Court GRANTS Plaintiffs' Motion and DENIES Defendants' Motion and thereby announces its decision to apply Maine law in the upcoming trial of this matter.

**I.   STANDARD**

A federal court whose jurisdiction relies solely on the diversity of the parties must apply state substantive law. See Reicher v. Berkshire Life Ins. Co., 360 F.3d 1, 3 (1st Cir. 2004) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). To the extent that a conflict arises as to which state substantive law applies, the court resolves such question by utilizing the choice of law analysis of the forum state; in this case, Maine. See id. "The state of Maine generally follows the Restatement (Second) of Conflicts in determining choice-of-law issues." Ashmore v.

1

Northeast Petroleum Div., 843 F. Supp. 759, 772 (D. Me. 1994).  In both contract and tort disputes, Maine utilizes "the 'most significant contacts and relationships' approach." Flaherty v. Allstate Ins. Co., 822 A.2d 1159, 1166 (Me. 2003).  This approach requires the Court to generally consider the following principles:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) Conflict of Laws § 6 (1971) (hereinafter "the Section Six principles").  However, these principles must be considered in the specific context of the isolated issues as to which there is an actual conflict as well as the specific contacts that the Restatement considers relevant.  See Flaherty, 822 A.2d at 1167.  As discussed below, the actual conflicts that Defendants point to relate to Plaintiffs' tort claims.  Thus, the Restatement advises that the Court should consider the following contacts:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) Conflict of Laws § 145 (1971).

## II. DISCUSSION

In this case, Defendants assert there is a conflict of law with respect to four aspects of Plaintiffs' case: (1) Plaintiffs' claims against Defendant Sobol for fraudulent transfer pursuant to

14 M.R.S.A. § 3571 et seq.;[1] (2) Plaintiffs' claims for punitive damages; (3) the manner in which state law allocates joint tortfeasor liability; and (4) the state law with respect to "claimed lost value of settlement." To the extent that most of these conflicts arise out of Plaintiffs' tort claims, the significant contacts analysis is the same and the Court need not analyze each of these four conflicts separately. However, as noted below, the Court has given some independent consideration to the fraudulent transfer claim, which involves different facts and only two plaintiffs and one defendant.

A.     The Domicile & Residence of the Parties

In this multi-party case, the Court begins by considering the domicile and residence of the parties.[2] Plaintiff Glenwood Farms, Inc. ("Glenwood Farms") is a bottler and seller of Maine spring water, with its principal place of business in St. Albans, Maine. The company is owned by Henry Shaw, Jr., a resident of St. Albans, and the Shaw Family Trust. Plaintiff Carrabassett Spring Water Company, Inc. ("Carrabassett") is a Maine corporation with its principal place of business in Gorham, Maine. The company is owned by T. Martin Milligan of Westport, Connecticut and James Milligan of Gorham, Maine. With the exception of T. Martin Milligan, an owner who sometimes works out of his home in Connecticut, all of Carrabassett's facilities and employees are located in Maine. Plaintiff Tear of the Clouds LLC (also known as "Keeper Springs") is a New York limited liability company with its principle place of business in New York. Keeper Springs obtains and bottles its spring water in Vermont.

---

[1] Defendant previously explained the conflict between Massachusetts and Maine law, which boils down to a difference in the definition of "asset." (See Defs.' Obj. to Magistrate Judge Cohen's Mem. Dec. on Pls.' Mot. to Amend Compl. (Docket # 120) at 3-6.)

[2] In connection with the pending motions, the parties have not offered specific evidence regarding the domicile and residence of each party. However, the Court has culled these facts from the record, including the record created in connection the with evidentiary hearing previously held in April 2004, which focused on personal jurisdiction issues.

3

Defendant Garve Ivey is a resident of Alabama, admitted to the bar in Alabama, and a partner in the firm of Ivey & Ragsdale. Defendant Ivey & Ragsdale is a law firm with its principal office in Jasper, Alabama. Defendant Thomas Sobol is a resident of Massachusetts, and a member of the bar in that state. He is managing partner at the Boston office of Hagens Berman Sobol Shapiro LLP. Defendant Steve Berman is a resident of the state of Washington. He is the managing partner of Hagens Berman Sobol Shapiro LLP and works out of the firm's Seattle office. Defendant Hagens Berman Sobol Shapiro LLP is a law firm with more than thirty attorneys and offices in Seattle, Washington; Boston, Massachusetts; Los Angeles, California; Phoenix, Arizona and Chicago, Illinois.

Suffice it to say that the varied domiciles and places of business of the parties do not dictate any clear significant contact or relationship with a single state that might be generally applied to all of the tort claims in this case. With respect to the fraudulent transfer claim, the Court notes that both Plaintiffs (Glenwood Farms and Carrabassett) are from Maine and the only Defendant (Sobol) is from Massachusetts.

**B.      The Place Where the Injury Occurred**

Turning to the place where the injury occurred, the tort injury alleged by Plaintiffs is essentially the loss of a favorable settlement. With respect to Glenwood Farms and Carrabassett, their injuries occurred in Maine. Likewise, with respect to Tear of the Clouds, the injuries arguably occurred in Vermont and New York. With respect to the fraudulent transfer claim, the Court notes that the alleged injury would occur in Maine if Plaintiffs Glenwood Farms and Carrabassett were ultimately prevented from enforcing any judgment they won against Defendant Sobol. Thus, as to all of the claims where there is an arguable conflict of law, this particular contact favors the application of Maine law over Massachusetts law.

### C.      The Place Where the Conduct Causing the Injury Occurred

With respect to the place where the conduct causing the injury occurred, Plaintiffs' underlying tort allegations suggest that this injury-causing conduct took place in a variety of locations, including New Jersey (where the final mediation sessions were held) as well as the states where Defendants proceeded to file consumer class actions. (These states allegedly include Massachusetts, New Jersey Connecticut, Florida, Alabama, Missouri, Illinois and New York.) In addition, Defendants' alleged conduct, including their publication of a website that allegedly contributed to the dissemination of confidential information and the breakdown of the proposed settlement, can probably be traced to their respective offices in Alabama, Massachusetts and Washington. With respect to the fraudulent transfer claim, the conduct, which consists of Defendant Sobol's transfer of property, occurred in only one place: Massachusetts.

Thus, as to all of the claims at issue, this particular contact would appear to favor the application of Massachusetts law over Maine law. However, the Court ultimately believes that, with respect to the particular tort issues as to which there is a conflict, this contact is less important than the place where the injury occurred. In this case, the allegedly negligent and improper conduct of the Defendant attorneys can still be the subject of disciplinary proceeding before the various state bars to which each attorney is admitted. Thus, the application of Maine law does not necessarily prevent each state where the individual attorney's conduct occurred from vindicating its interest in regulating the conduct of its licensed attorneys via enforcement of their individual codes of professional responsibility. [3]

---

[3] In addition, to the extent that Maine law allows for rules of professional responsibility to be utilized as evidence of the standard of care applicable in legal malpractice actions, the Court envisions that in accordance with Maine Bar Rule 1, Plaintiffs would rely on the rules applicable to each Defendant attorney rather than the Maine Bar Rules. See, e.g., Sargent v. Buckley, 697 A.2d 1272, 1275 & n. 3 (Me. 1997).

### D.     The Place Where the Relationship Between the Parties is Centered

Finally, the Court must consider any significant contacts that can be attributed to the place where the relationship, if any, between the parties is centered.  Both sides seem to agree that, in the unique situation of this case, this may be the most important contact.  However, they disagree as to what place serves as the center of the parties' relationship.

Plaintiffs argue that this Court has already answered the question of where the relationship between Plaintiffs and Defendants was centered when it declared, in the context of settling a personal jurisdiction challenge, that:

> Defendants sought out and represented Maine clients. The purpose of the representation was to challenge a competitor's claim that their water was spring water that embodied 'what it means to be from Maine.' Because of the nature of the claim, Defendants sought out clients who would put a 'Maine face' on the case. Defendants also understandably undertook substantial investigation in Maine and hired experts in Maine.

Glenwood Farms Inc. v. Ivey, 335 F. Supp. 2d 133, 142 (D. Me. 2004).  This statement by the Court was made prior to Tear of the Clouds, a company based in New York and Vermont, joining this case.[4]  For their part, Defendants argue that Massachusetts was the center of the relationship between Plaintiffs and Defendants, describing the relationship as one where "Massachusetts attorneys were hired to represent clients" and "the joint litigation group was headquartered in Massachusetts, funded by Hagens Berman in Massachusetts, with the bulk of

---

[4] In its Response in Opposition to Defendants' Motion in Limine Seeking Application of Massachusetts Law (Docket # 397), Tear of the Clouds does argue, without citation, that the choice of law analysis would favor application of New York law rather than Massachusetts law to their claims.  Notably, Tear of the Clouds does not explain why the choice of law analysis would warrant the application of New York law over Vermont law. Moreover, neither Tear of the Clouds nor any other party has suggested that there exists an actual conflict between Maine law and the Vermont or New York law that might be applied to the claims of Plaintiff Tear of the Clouds.  In the absence of an actual conflict of law, the Court has assumed that the application of Maine law (as compared to New York law or Vermont law) will not affect the outcome of the claims brought by Tear of the Clouds.  The Court also notes that even if there were an actual conflict it is not clear that Maine's choice of law analysis would call for the application of various state substantive laws in the context of this single case.  See *infra* note 5.

6

attorneys' work performed under the contract in Massachusetts." (Defs.' Mot. (Docket # 384) at 8.)

Of course, Defendants' position is not entirely factually accurate, as the Defendant attorneys hail not only from Massachusetts, but also from Alabama and Washington. Moreover, it appears that even though Attorney Sobol works out of Massachusetts, his firm, which is headquartered in the state of Washington, clearly has a national practice with multiple offices. Thus, when Plaintiffs hired Hagens Berman, they did not simply hire Massachusetts attorneys. They hired a national firm.

If the Court were to honestly apply Defendants' logic, then the substantive law applied should reflect the law of Alabama as it pertains to the claims remaining against Attorney Ivey and his firm, Ivey & Ragsdale. With respect to Attorney Berman, Washington law would be applied. The question of what substantive law would apply to Hagens Berman would then apparently turn on which office and attorneys presumably did most of the work related to the failed settlement and the subsequent consumer class actions. Faced with this perplexing alternative, the Court will instead rely on its previous assessment of this case; namely, that the relationship between Plaintiffs and Defendants was uniquely centered in Maine and their attempts to challenge Poland Springs as the lead bottler and seller of Maine spring water.

Notably, the question of the nexus of the parties' relationship is easily answered in the context of the fraudulent transfer claim. This claim focuses on Defendant Sobol's conduct during the course of this litigation and claims Defendant Sobol engaged in the transfer of property "[w]ith the actual intent to hinder, delay or defraud" Plaintiffs from actually enforcing any judgment they might obtain in this case. 14 M.R.S.A. § 3573(1)(A). The creditor-debtor

relationship that is a prerequisite to this claim would ultimately grow out of this litigation and, thus, is clearly centered in Maine.

E.  **End Result of the Significant Contacts Analysis**

In light of the above significant contacts and relationships analysis and considering all of the relevant Section Six principles, it is clear that Maine law should apply to the fraudulent transfer claim. Two of the four significant contacts, the place where the injury occurred and the place where the relationship was centered, undeniably point to the application of Maine law.

The question of what substantive law should be applied to Plaintiffs' tort claims is admittedly a closer call.[5] The facts and tort claims alleged in this case undoubtedly involved contacts with multiple states. However, Maine appears to be the single state with the most significant contacts. Consideration of the Section Six principles, in light of these significant contacts with Maine, favors the application of Maine law as compared to Massachusetts law. The alleged injuries for which Plaintiffs seek compensation via their tort claims inured mostly to Maine businesses. Defendants solicited Maine clients and built their case on field research done in Maine. Moreover, certainty, predictability and uniformity of result within this case as well as the ease in the determination and application of the law to be applied strongly favor the application of Maine law to all of the tort issues presented. Therefore, faced with a conflict regarding any aspect of the tort law to be applied to this case, the Court will apply Maine law.[6]

---

[5] Under the principle of depecage, the Court could arguably apply the substantive law of different states within the context of this single case. See La Plante v. Am. Honda Motor Co., Inc., 27 F.3d 731, 741 (1st Cir. 1994) (citing Putnam Resources v. Pateman, 958 F.2d 448, 465 (1st Cir. 1992)). However, to the extent that the Court is applying the choice-of-law analysis utilized in Maine, the Court notes that there appear to be no Maine cases applying the principle of depecage. None of the parties' briefs on choice of law have suggested that the Court should apply the principle of depecage. Moreover, in the context of this case and considering the potential for confusing the jury with multiple instructions on the substantive law, various Section Six principles would appear to counsel against application of depecage.

[6] While the Court has reached it choice of law decision via application the standard laid out above, it is worth noting that proceeding with the application of Maine law also allows for pragmatic and efficient trial management of this

For the reasons just explained, Plaintiffs' Motion in Limine Seeking Ruling as to Applicability of Maine Law (Docket # 364) is GRANTED and Defendants' Motion in Limine Seeking Application of Massachusetts Law (Docket # 384) is DENIED.

SO ORDERED.

                                                  /s/ George Z. Singal
                                                  Chief U.S. District Judge

Dated this 23rd day of February 2006.

---

case. As it now stands, the parties have informed the Court that this will be a complicated jury trial requiring approximately 15 trial days. The Massachusetts law that Defendants ask the Court to apply would restrict the issues that may ultimately go to the jury in this case. To the extent that Maine law would require more issues to be decided by the jury (as compared to being decided by the Court as a matter of law), the Court believes the prudent course is to apply Maine law and allow the jury to deliberate on these additional issues. Assuming Plaintiffs ultimately obtain a judgment in their favor and Defendants choose to appeal this Court's choice of Maine law, the First Circuit can easily apply Massachusetts law and vacate the objectionable portions of the judgment. By contrast, if this Court were to limit jury deliberation by applying Massachusetts law only to be told later that Maine law should have been applied, an entirely new trial would likely be required.